GUSTAVUS L. MASTIN, trustee for HARRIET BARNARD, plaintiff in error, *vs.* NATHANIEL L. BARNARD, administrator of JOHN D. BARNARD, defendant in error.

1. Testator by a codicil to a will in which he had particularly defined the duties of his executors therein appointed, cuts down the portions of his daughters to a life estate with the remainder to their children— makes that life estate a separate one, and directs his executor to receive the daughter's portions in trust for them—the nett increase only to be allowed by the executors for the comfortable support and maintenance of his daughters. It was also provided that the executors may allow to the husbands of the daughters the nett annual proceeds if they thought it prudent to do so. H., one of the daughters, married J. L. D., who was duly appointed trustee for his wife and her share of her father's estate. The executors turned over the same to him and took his receipt as trustee therefor, and the husband managed the trust and appropriated the nett income during his life. On a bill filed by the succeeding trustee against the representative of the deceased husband for an account of the nett income: *Held*, the executors could not have taken the daughter's share of the estate as executors but as trustees; that the power given them in codicil to allow the husband the nett income was not a personal one, and that on the appointment of the husband as trustee and the executors accounting with him in that character his estate was not liable to an account for such of the nett income of his wife's estate as he had received.

Demurrer to a bill in equity, decided by Judge O. A. BULL, at November Term, 1862, of Troup Superior Court.

The facts of this case are fully set forth in the opinion of the Court.

B. H. HILL, for plaintiff in error.

WM. DOUGHERTY, *contra.*

*By the Court*—LYON, J., delivering the opinion.

David Moore, of the city of Huntsville, and State of Alabama, by his will, bequeathed the whole of his estate to his wife and children, and therein appointed three persons as his executors, who were authorized to sell certain lands whenever it should seem to them proper and most to the interest of his children; also, to continue in operation, all or any of

Mastin *vs.* Barnard.

his plantations for the benefit of his children, and with the consent and approbation of the Court of Probate, and in the exercise of sound discretion, they may discontinue and break up any of them, and hire out the slaves and rent out the lands, if they shall believe it most to the advantage of his children; and they were authorized to keep up all of his plantations, if they think it best for his children, until a division and distribution takes place; and in order to make the farms profitable, they, the executors, were authorized to purchase fence rail and necessary timber for the use of any of the plantations, and remove the hands from one place to another, or to buy timbered lands sufficient for the farms. The wife of testator had the right to draw her entire share at the expiration of any one year; but she might, if she remained single, let her part of the estate remain in joint stock until the oldest living child, if a male, should arrive at lawful age, or if a female, until she should arrive at the age of eighteen and should marry, in which event, then a division should take place and their respective shares should be allotted to them respectively; or should his wife marry, then a division should be made allowing her part of the estate to be set apart for her use and delivered up by the executors, and the balance kept together until distribution be made among the children respectively. The executors also had power by and with the consent of his wife during widowhood to sell such of the negroes as proved refractory or habitual runaways, but not for slight or trivial causes.

They were requested to see that the children were raised to business habits, properly educated in a moral, religious manner, so as to make of the boys men of business, and useful members of society, and the females ornamental as well as useful members of society. They were prohibited from vesting any money of the estate in State or railroad stocks, but were permitted to vest in United States stock to an amount not exceeding $100,000.

By a codicil appended, the testator declared, "It is my will and desire that my estate, real, personal and mixed, or of any description whatever, which is intended for my daughters,

should vest in, and be held by, my executors, above mentioned, or the survivor, in trust for the sole and separate use and benefit for my said daughters respectively, and should they, or either of them, marry, then the said shares to be for their sole and separate use, free from the control or management of their husbands, and not in any manner to be liable for their debts, the nett increase only to be allowed by my said executors for the comfortable support and maintenance of my said daughters and their families, and on the death of my said daughters, leaving children, the share of such daughter to be equally divided among her children: *Provided,* that my said executors may allow to the husbands of my daughters the nett general proceeds of their shares, if they think it prudent to do so. Lastly, I hereby appoint George P. Brime and William J. Mastin (two of the executors) guardians of my children."

Harriet, one of testator's daughters, married John D. Barnard. The executors divided the estate, and turned over the share of Mrs. Barnard to her husband, who had been " duly constituted the trustee for the said Harriet," (allegation of the bill,) and who, " as such trustee, did receive from the executors the portion which, under said will, his wife, Harriet, was entitled to, and gave said executors his receipt for such portion. Said John D. continued to discharge the duties of said office of trustee, receiving himself the annual proceeds, etc., until the — day of April, 1860, when he died." Subsequently, Gustavus L. Mastin was appointed trustee to fill the vacancy, and he filed this bill against Nathaniel L. Barnard, as the administrator of the deceased trustee and husband, to compel him to account for such of the trust funds as had not been surrendered to the complainant, and to account for the nett income arising from the use and appropriation of the same by John D. Barnard in his lifetime.

To so much of that bill as prayed an account for the nett income of the trust while in the hands of the deceased husband, the defendant demurred, and upon the hearing thereof the Court sustained the demurrer, and dismissed so much of the bill. To this decision the complainant excepted.

Upon the hearing before us, it was argued by counsel for plaintiff, that the executors of the will took and held Mrs. Barnard's share of the estate as executors and not as trustees; that the clause in the codicil giving to them, the executors, the power to allow to the husbands of the daughters the nett annual proceeds of their respective portions, if they should think it prudent to do so, was a personal one, and could be exercised by them alone, and if they failed to make the appointment in favor of the husband, he could never take it; that it did not attach to and follow the trust into the hands of whomsoever it might be transferred by operation of law or otherwise, and as these executors had not, in the exercise of the discretion given by the codicil, allowed the husband to take the nett income, his estate was liable to complainant for so much thereof as the intestate, in his lifetime, had received and appropriated to his own use.

Were we to admit that the premises, stated in the argument, were sound, it would not follow that the conclusion was a just one, because the executors having permitted the husband to be duly appointed the trustee of the wife and her share of the estate, and paid over to him, as such trustee, the whole share of the wife—their assent to allow him to take the nett income must be presumed. But we think the premises of counsel as unsound as his conclusion. The persons named in the will as executors, could not have taken and held the trust, created by the codicil, as executors, because the trust was to be executed after the property to which it attached had passed out of the estate by distribution, and became that of the distributee. Their duties, powers and title, as executors, ceased with the distribution of the estate, and if the property by distribution had passed into their own hands in any other right than as executors, such as distributees, to hold in trust for the daughters of the testator, then they would hold in that new right, not as executors of a will that has become by administration and distribution *functus officio.* It is true that the testator, in the codicil, declared that the share of the daughter " shall vest in and be held by his (my) said executors above mentioned or the sur-

vivor in trust," etc.; but the term is used simply to designate the persons whom he desired to take upon themselves the executions of this trust, as a more convenient expression than a repetition of their respective names would be.  The portions assigned to the daughters were to go out of their hands as executors of his will into their hands as trustees for his daughters.  Neither was the power of appointment created by this codicil a personal one—to make powers of this character personal, the persons on whom it is conferred must be specially named, and not merely referred to as a class or *virtute officii,* as in this "my executors."  In such a case, the power is never personal.  Again, the power here is coupled with a trust, and in that case it is immaterial whether the power is personal or not, for a Court of Equity will insist upon its execution, whether the person named exercises it or not.

The object of the testator in conferring this discretionary power on his executors in executing the trust, was to secure, certainly, to his daughters, for the suitable maintenance of themselves and their families, out of the nett income of their shares.  He evidently preferred that the husband should have the disbursement of it, but for fear that such persons might not be worthy of the trust, and that they might divert it from his intended purposes, he gives the trustees power to withhold and not allow it to go into their hands, unless they think it prudent to do so—that is, if the husband is a prudent and safe person to be charged with the means for the support of his family, then they may allow him to have this fund.  The executors, feeling that Barnard was a proper person to be entrusted, not only with the nett income, but with the execution of the whole trust, decline to accept the trust themselves, and the husband is duly appointed, and they turn over the whole fund to him, as trustee, and in doing so they allow him to take the nett income—it was prudent in their judgment to do so, and no doubt to the best interest of the whole trust fund.

Let the judgment be reversed.