## PRINCE *et al.* v. BARROW, executor, *et al.*

1. A devise or bequest upon condition of making payment to third persons is usually equivalent to a devise or bequest upon a trust.
2. Where a testator devises and bequeaths his whole estate to his wife, "for and during her natural life, with the condition" that "she shall apply" a designated portion of the annual income thereof to her own use, "and the residue of it to the following: (a) such part of it as may be necessary to the support of [his] sister, . . so long as she shall live . . (b) so much more of it as to her may seem proper to be allotted to the assistance of the children or grandchildren of [such] sister, and (c) the remainder to be divided into three equal parts for distribution between" his two living children "and the children or descendants of [his] deceased son," and the sister of the testator dies before he dies, upon his death his whole property becomes a trust estate, during the life of his widow, to be held and administered by her as such in accordance with the directions of the will, that is, to first apply the designated portion of the annual income to her own use, and if the children or grandchildren, or either of them, of the testator's sister need assistance, to allot to them so much of the remainder of such income as, in the exercise of a fair and honest discretion, may to her seem proper for this purpose, and then to divide the residue of the income, per stirpes, among his two living children and the descendants of his deceased son.
3. Even where the amount of the beneficial interest to be taken by a cestui que trust is to be measured and determined by the discretion of the trustee appointed by the creator of the trust, a court of equity will not allow the trust to be destroyed by the refusal of the person nominated as trustee to accept

the trust, or his declination or failure to execute it, if, by any possibility, it is capable of execution by the court.

4. The trust for the assistance of the children or grandchildren of the testator's sister was not so indefinite and uncertain as to be incapable of execution by the court, upon the failure or refusal of the testator's widow to accept and execute it.

5. As the effect of granting the prayers of the petitioners would be to set aside the will and destroy the trust just above mentioned, the court below erred in granting them.

6. The court should have decreed that the whole of the testator's estate was given to his widow, during her life, in trust for the purposes above indicated, and, in view of the facts disclosed by the record, should have given her a reasonable time within which to either accept or renounce the trust, and, in the event she did the latter, should have appointed a trustee to take charge of and administer the whole estate, during her life, under the direction of the court, in accordance with the testator's intentions as declared in his will.

SIMMONS, C. J., and CANDLER, J., dissenting.　Even if the bequest to the children can be construed as a trust, it is so vague and indefinite that no court could enforce it.　The authorities relied on in the opinion of the majority are, in our opinion, not applicable to the facts of this case.

Argued April 7, — Decided August 11, 1904.

Equitable petition.　Before Judge Seabrook.　Chatham superior court.　February 25, 1903.

The will of Henry R. Jackson contains the following provisions : " First : I give and devise all of my property to my wife, Florence B. Jackson, for and during her natural life, with the condition that should the annual income from it fall below ten thousand dollars, she shall apply five thousand• dollars of it to her own use and the residue of it to the following : (a) such part of it as may be necessary to the support of my sister, Mrs. Sarah M. R. Prince, so long as she shall live, and, after her death, to the removal of her body and its burial in my lot in the cemetery at Athens, Georgia, (b) so much more of it as to her may seem proper to be allotted to the assistance of the children or grandchildren of my said sister, and (c) the remainder to be divided into three equal parts for distribution between my children, Howell C. Jackson, Cornelia J. Barrow, and the children or descendants of my deceased son, Henry Jackson.　Second : On the death of my said wife, it is my will, that, after a sufficient provision shall have been made for the support and burial of my said sister, my entire estate shall be divided into three equal shares for distribution as aforesaid between my two living,

and the descendants of my one dead child. Third: Whenever the yearly income from my estate shall exceed ten thousand dollars, it is my will that my said wife shall apply one half of it to her own use and the other to the other uses as hereinbefore set out. I also direct that my wife shall have the right to occupy any house of mine she may prefer, rent-free, provided she shall accept the provisions made for her by this will in lieu of dower and year's support as provided by law. Fourth: I hereby appoint my said wife, Florence B. Jackson, to be executrix of this my last will and testament, closing with the expression of my earnest wish and request that she shall invoke and follow, in all cases of doubt, whether legal or ethical, which may arise in the administration of the trust I am now placing upon her, the advice of Mess. Denmark & Adams, both of whom I believe to be personally my friends, and in the professional ability and moral probity of each of whom I repose the most absolute confidence. By a codicil the testator nominated his daughter Cornelia J. Barrow to be coexecutrix with his wife.

A contract was executed by Florence B. Jackson, the widow of the testator, Cornelia J. Barrow and Howell C. Jackson, his children, and Cornelia A. Moore, Marion M. Jackson, Callie Cobb Jackson (afterwards Callie J. Orme), and Florence K. Jackson, children of the testator's son Henry Jackson, deceased, which recited: "That the said Florence Barclay Jackson, for the purpose of settling all claims which she may or can have under the last will and testament of her deceased husband, the late Gen. Henry R. Jackson, and in full settlement of all claim that she may or can have upon the estate of her said deceased husband in any way, shape, form, or manner, has made a proposition, which proposition has been and is hereby accepted by all of the parties of the second part, who with the said party of the first part are the sole and only heirs at law of said Henry R. Jackson, deceased, and the sole and only legatees under the will of said Henry R. Jackson, except that the will provides for assistance to the children and grandchildren of the late Mrs. Sarah M. R. Prince, in the discretion of the party of the first part." The contract provided: that Mrs. Florence B. Jackson should be allowed to erect, at the expense of the estate, a suitable monument to her husband; that $25,000 be set aside to her for a year's support, and that all bills for house-

hold and living expenses up to the first of June, 1898, should be paid by the estate; that the widow should during her life have the use of the residence free of rent, tax, repairs, and insurance, and should acquire absolute title to all the household furniture, etc., with certain immaterial exceptions; that she should receive an annuity for life of $4,000 per annum, dating from June 1, 1898, for the payment of which the estate was to be kept together, and which should continue a first charge upon the property; "that the said Florence Barclay Jackson, upon the signing of this agreement by all the parties hereto and the payment of said $25,000 for a year's support, will relinquish all right to qualify as executrix of the said will, and all right to accept any trust thereunder, and she shall be in no wise thereafter interested in said estate or its income, except as to the said annuity or quarterly payments hereinbefore agreed upon to be paid to her, which annuity is hereby made a first charge and lien upon the property of said estate and the income thereof," and that "the said Cornelia J. Barrow, as sole executrix, shall have authority to carry out the provisions of the will relating to the Prince family." This agreement was carried out, and the payments and deliveries of property required in it were made. Florence B. Jackson declined to qualify as executrix, and Cornelia J. Barrow qualified as sole executrix of the will. Cornelia J. Barrow died, and Pope Barrow, as her executor, qualified as executor of Henry R. Jackson. It was further agreed that the preceding contract should be confirmed by decree of the court; that certain properties of the estate should be sold from time to time, in order to create a trust fund to provide for the annuity to Florence B. Jackson (this fund to be deposited with a bank or trust company under appropriate contracts); that after paying all sums payable to or for the benefit of Florence B. Jackson under the agreement, all surplus income should be divided into three equal parts, one of which should be paid to Howell C. Jackson, son of the testator, one to the children of Henry Jackson, deceased, son of the testator, and the third to Pope Barrow, as executor of Cornelia J. Barrow. There were provisions for equalizing, by certain payments, the indebtedness of the children of the testator to his estate, and that the amount due be treated as an advancement; also for a division of the corpus of the estate in the future.

The foregoing facts were set out in a petition to the superior court, for a decree ratifying and confirming these contracts and empowering the executor to sell in order to carry out the contracts and administer the estate, and for other relief. The contracting parties, except Cornelia J. Barrow and Florence B. Jackson, were plaintiffs in this petition. Pope Barrow, as executor of Henry R. Jackson, as guardian of his minor children, and as executor of Cornelia J. Barrow, Florence B. Jackson, and Henry R. J. Prince were parties defendant. Basilene Prince and Jacqueline P. Thomas (née Prince) were originally plaintiffs, but, on motion of the other plaintiffs, were stricken as plaintiffs and made parties defendant, and, with their brother and codefendant, Henry R. J. Prince, were called upon by order of court to set up any claims they might have under the will of Henry R. Jackson or on his estate; it being alleged in the petition that their mother, Mrs. Sarah M. R. Prince, who was referred to in the will as the sister of the testator, died before the testator, that they were her only surviving descendents and heirs at law, and that they claimed an interest in the estate. They answered as follows: (*a*) That the original appearance of Basilene Prince and Jacqueline P. Thomas as plaintiffs in the petition was entirely at the request of the then executrix, Cornelia J. Barrow, and was in pursuance of a consent prepared for and submitted to them at her request, authorizing counsel for the estate and for the executrix to put their "names as plaintiffs in the petition to the court to construe the will of Gen. Henry R. Jackson, and get a decree protecting our [their] right so far as you [they] are able." (*b*) That if the contracts between the widow and children and grandchildren and executrix and executor of Henry R. Jackson should be construed as affecting in any respect the claim of the defendants under the first item of the will, they were nugatory for this purpose, because the defendants were not parties thereto. (*c*) That the discretion vested in Florence B. Jackson by the first item in the will was not vested in her as executrix, but was a personal trust and discretion, and that the contract of June 20, 1883, so far as it undertook to transfer this discretion from her to Cornelia J. Barrow, was nugatory; the provision not being for her own benefit, but for the benefit of the defendants, her action in surrendering it was not binding upon her, particularly since the death of Cornelia

J. Barrow, as there was no effort on the part of Florence B. Jackson to transfer it to Cornelia J. Barrow except for her life, and such transfer has, therefore, by the death of Cornelia J. Barrow, become void, and the discretion, if ever divested from Florence B. Jackson, has been revested in her. (d) That in determining the amount proper to be allotted to the assistance of these defendants under the first item, due consideration must be given to the sums due by the children of Henry R. Jackson to his estate, for the surrender and cancellation of which contracts not binding on the defendants had been entered into; and that interest on these amounts should be added to the income in ascertaining the amount thereof. (e) That unless Florence B. Jackson should refuse to act, defendants' interest in the estate could only be fixed by the exercise on her part of the discretion with which she was vested, and, on information and belief, that Florence B. Jackson, while unwilling to exercise this discretion of her own motion, or at the request of the defendants, would exercise it if the court should be of opinion that the discretion was so vested in her, and would so order. (f) That the first item of the will constituted a trust to Florence B. Jackson during life, as a trustee, and charged the property in her hands, first, with the payment of half the income (to be not less than $5,000) to herself, and, second, with the payment to the defendants of such amount as should in her opinion be allotted to their assistance, and, third, with the division of the remainder between the children and grandchildren of the testator; that this trust was conveyed to her individually, and not as executrix, and could not be transferred, and did not pass to Cornelia J. Barrow, either by contract or by qualification as executrix. (g) That Florence B. Jackson has only declined to qualify as executrix, and has not declined to accept the trust created by the first item; but that if she has declined to do so, the trust is not thereby affected, and can not fail for the want of a trustee, but that some fit and proper person should be appointed to administer it and distribute the income; the court to fix the amount to be allotted to these defendants in the light of all the circumstances, particularly as they may be affected by the income of the estate. They prayed that the contracts referred to should be decreed to be of no effect so far as they affected the interest of the defendants; that the amount of the income of the estate, com-

puted as indicated, should be ascertained by reference to an auditor or master, or otherwise; that the court pass an order authorizing and requiring Florence B. Jackson to exercise the discretion vested in her, and make known to the court the amount of income which should properly be allotted to the defendants for years past and years to come; that they have judgment for the amount so allotted; that the court decree that Florence B. Jackson was still the trustee under the first item, and vested with all the powers and control appurtenant thereto; that if she shall renounce or refuse to accept the trust, or shall be decreed to have renounced or refused, a new trustee be appointed to take charge of the estate and administer it; and for other relief.    The other defendants answered, admitting the allegations of the petition to be true, and that the agreements ought to be confirmed.

The case was heard by the court without a jury, and a decree was rendered, which, so far as material, provided, " That the three defendants (Basilene Prince, Jacqueline P. Thomas, and Henry R. J. Prince) are not entitled to the claim set up in their answers, or to any judgment or relief against the estate of the testator, Henry R. Jackson, or the executor of his will, and their contentions are not sustained.    It is further  .  .  decreed that the said agreements [referring to the agreements hereinbefore set out] be and they are hereby confirmed."    The three defendants named in the decree filed a bill of exceptions, assigning error thereon.

*Lawton & Cunningham* and *O'Connor, O'Byrne & Hartridge,* for plaintiffs in error.    Intention of testator governs construction of will: Civil Code, § 3324; 110 *Ga.* 708.    Conditions may be annexed to devise: 1 Shep. Touch. (ed. 1808) 123, n. 1, 2.    Bequest on condition considered as imposing a trust: 2 Wms. Ex. *1124; 1 Perry on Trusts (3d ed.), § 121; 1 Lewin on Trusts, 138, 141; 2 Best & Sm. 232–252.    Discretion of primary donee will be controlled if not honestly exercised: 1 Jarm. Wills, 698; 1 Jac. 354.    Intention to create trust inferred, when the trust is necessary to carry out provisions of will: 27 Am. & Eng. Enc. L. (1st ed.) 38; 1 Perry on Trusts, § 152; Civil Code, §§ 3148, 3162; 12 *Ga.* 192; 70 *Ga.* 152; 104 *Ga.* 351.    Renunciation of trust prevented by dealing with the estate: 1 Perry on Trusts, § 271.    Trust not defeated by failure to act: 26 *Ga.* 302, 309, 310; 8 Ves. 569.    Powers coupled with trust, or which imply

trust, differ from purely discretionary powers: 1 Perry on Trusts (3d ed.), §§ 248, 249, 251, 325, 332; 8 Ves. 561 (574); 26 *Ga.* 309. This class of powers will be construed into trusts so as to give donee a vested interest, and the trustee only the power of selection, apportionment, and distribution: 2 Perry on Trusts (3d ed.), § 508, p. 32; Sugd. Powers; 392–3–4–5; 1 Ves. Jr. 311; 5 Ves. 505; 1 Atk. 469. The petitioners must do equity: Civil Code, § 3924; 1 Pom. Eq. Jur. § 385–6; 5 Mylne & Cr. 97; 50 Miss. 603.

*Adams & Adams* and *J. Randolph Anderson,* contra. Plain words necessary to change natural course of descent: 12 *Ga.* 163; 30 *Ga.* 230; 78 *Ga.* 475; 116 *Ga.* 261. No technical trust created: Civil Code, § 3148; 59 *Ga.* 675; 113 *Ga.* 498. The provision invoked by plaintiffs in error is too indefinite for legal enforcement: 23 N. Y. 298 (80 Am. D. 269). Doctrine of cy pres not applicable: Civil Code, §§ 3338, 4006–7–8; 110 *Ga.* 542–3; 69 *Ga.* 569; 2 Story Eq. §§ 1164 et seq. If a technical trust was created, Mrs. Jackson can not be compelled to execute it: Civil Code, § 3190; 32 *Ga.* 640 (4); 80 Am. D. 273; 27 Am. & Eng. Enc. L. (1st ed.) 81, note. No one but Mrs. Jackson could execute the discretion given her by the will: 1 Lewin on Trusts, t. p. 257–8; 32 *Ga.* 640; 80 Am. D. 273.

FISH, P. J. Can the widow and other heirs at law of the testator set aside his will, and by agreement settle his estate among themselves? Undoubtedly they can, if they are the only parties who have any legal or equitable interest therein. So far it appears from the case before the court, they are the only parties at interest, unless the three plaintiffs in error, who are the only children and descendants of his sister, Mrs. Sarah M. R. Prince, have, under his will, an interest in his estate. Whether they have such an interest or not depends upon the question whether the will creates a trust in their favor, for and during the life of Mrs. Jackson. That General Jackson devised and bequeathed his whole estate to his wife for life, in trust for certain specified purposes, we think is very clear. By the will a life-estate in the whole of his property is given to her, with the condition that she shall apply a designated portion of the annual income arising therefrom to her own use, then so much of the remainder as may be necessary to the support of Mrs. Prince, then so much more of

it as to her [Mrs. Jackson] may seem proper to be allotted to the assistance of the children or grandchildren of Mrs. Prince, and the residue is then to be divided into three equal parts for distribution between his two living children and the children or descendants of his deceased child. The general rule is, that when a testator gives property to one person with or upon condition that such person shall give a designated portion of such property or its proceeds to another person, a non-compliance with the condition by the immediate devisee or legatee does not work a forfeiture of the estate created by the will. "A grant or devise upon condition of making payment to third persons is usually equivalent to a grant or devise on a trust." 3 Enc. Laws of Eng. 250, citing Theobald on Wills, 450, and Attorney-General *v.* Wax Chandlers, L. R. 6 H. L. 1. In Stanley *v.* Colt, 5 Wall. 119, it was held : "Whether words in a devise constitute common-law conditions annexed to an estate, a breach of which or any one of which will constitute a forfeiture, defeat the devise, and let in the heirs, or whether they are regulations for the management of the estate, and explanatory of the terms under which it was intended to have it managed, is a matter to be gathered, not from a particular expression in the devise, but from the whole instrument." In delivering the opinion, Mr. Justice Nelson said : "Mr. Sugden, speaking of conditions, observes, that what by the old law was deemed a devise upon condition, would now, perhaps, in almost every case, be construed a devise in fee upon trust, and, by this construction, instead of the heir taking advantage of the condition broken, the cestui que trust can compel an observance of the trust by a suit in equity." (Citing Sugden on Powers, 123, 7th London ed.) In a leading English case a testatrix, after giving several legacies, some of which were legal and others void as being contrary to the mortmain act, proceeded as follows : "I give, devise, and bequeath to T. M. W. all my real estates, both freehold and copyhold, and all the residue of my personal estate and effects, to hold to him the said T. M. W., his heirs, executors, administrators, and assigns for ever, upon this express condition, that if my personal estate should be insufficient for the purpose, he or they do and shall, within twelve months after my decease, pay and discharge all and every the legacies hereinbefore bequeathed." She then expressed her confidence that he would comply with her wish, and made all her

real and personal estate chargeable with the payment of the lega-
cies and bequests. She nominated and appointed two persons as
executors and trustees of her will. The personal estate was in-
sufficient for the payment of the legacies, and T. M. W. did not,
within twelve months after the decease of the testatrix, pay any
of them. It was held by the Court of Queen's Bench, and affirmed
by the Exchequer Chamber, that the words "upon express condi-
tion" did not create a condition for the breach of which the heir
might enter, but created a trust which the defendant, taking the
legal estate, would in equity be bound to perform. Cockburn,
C. J., said: "We have the authority of Lord St. Leonards, the
highest, perhaps, of the present day with regard to the law of real
property, for saying that the tendency in modern times has been
to depart from the strict interpretation adopted in earlier periods
of our law when these matters were considered only with reference
to the common law; and that, where the language of the will and
the intention of the testator admit of it, these devises 'upon con-
dition' are to be considered as imposing a trust, and not as condi-
tions which shall take the estate out of the devisee if he does not
comply with them." (Citing Sugd. on Powers, 7th ed. 122.)
Crompton, J., said: "I think the rule is well laid down by Lord
St. Leonards, with regard to estates upon condition, 'that what by
the old law was deemed a devise *upon condition* would now, per-
haps, in almost every case, be considered a devise in fee upon
trust.' And he adds, 'By this construction, instead of the heir
taking advantage of the condition broken, the cestui que trust can
compel an observance of the trust, by a suit in equity.' 1 Sugd.
Pow. 122, 7th ed. And the passage is cited in 2 Jarman on
Wills, note (c), 2nd ed., apparently without the slightest doubt as
to its being good law." And Blackburn, J., after quoting from
Lord Coke, and stating that the reason assigned by him for the
old rule was "that otherwise the legatee would be remediless,"
said: "But since Lord Coke's time that reason has ceased to ex-
ist. From the greatly extended jurisdiction of courts of equity,
and the mode in which estates are administered in equity, — so
far from its being for the advancement of the interests and the
protection of the rights of the legatee, the person whose benefit is
intended, that such words should be construed as a strict condi-
tion at law, which is to be taken advantage of by the heir at law, —

it would be to his advantage to consider them as meaning that the devisee shall take the estate upon the terms that it shall be subject to the obligation that he will fulfill the condition; in other words, that he shall take the estate as trustee for that purpose." Wright *v.* Wilkin, 2 Best & Smith, 232.

In the present case, that the testator intended that his wife, to whom he devised and bequeathed the life-estate, should take the property in trust. for the purposes and objects which he pointed out, seems to us evident from the provision which he made for the support of his sister, Mrs. Prince. Surely it can not be that he intended that the support which he provided for his sister should be dependent upon Mrs. Jackson's accepting the provision which he made for her in the will. The fact that Mrs. Prince happened to die shortly before the testator did, whereby the provision for her support lapsed, can make no difference in the construction of his intentions at the time he executed the will. If the presence of the words with "the condition" would not have placed it in the power of Mrs. Jackson to defeat the testator's intention as to the support of Mrs. Prince, if she had survived him, then these words can not have such an effect as to the provision which he made for the children of Mrs. Prince, unless the language in which he expressed his intention as to them is such as to show that he intended no trust for their benefit, or his intention is expressed in terms so indefinite and uncertain as to render it impossible for a court of equity to lay hold of the trust and administer it. We think that he intended a trust for their benefit, for the life-estate is given to Mrs. Jackson "with the condition" that "she shall apply" so much of the annual income remaining after she has provided for herself and Mrs. Prince as he directed, as to her may seem proper to be allotted to their assistance. This is equivalent to its being given to her with direction that she shall apply. He expresses his intention in language which is not, even in form, precatory, but imperative. He does not recommend, wish, or entreat her to assist the children of Mrs. Prince, nor express his confidence that she will, but he gives positive and emphatic direction that she shall do so, to the extent that to her may seem proper. The objects of his intended bounty are clearly pointed out. The only uncertainty is as to the amount of assistance which shall

be rendered them.    This is left to the discretion of Mrs. Jackson, being so much more of the income remaining after she has taken her portion thereof and provided for the support of Mrs. Prince as to her may seem proper.    It is clear that the testator intended that if the children, or grandchildren, of his sister should need assistance, during Mrs. Jackson's life, they should receive it from the income of his estate remaining after the prior charges thereon had been met.    The amount of this assistance he left to the discretion of his wife, but he gave her no power to wholly deny them assistance if they should need it; and it is not to be supposed that the discretion as to the amount to be allotted to their assistance which he intended was to be other than an honest and fair discretion.    He never contemplated that it would, or could, be based on mere whim, caprice, or any other than a worthy motive, but the amount was to be the result of an honest, conscientious exercise of her judgment as to what was proper under all the circumstances.    Can a court of equity undertake to administer, or direct the administration of, the trust sought to be established under this will, when the trustee intended by the testator declines to accept and administer it; or is it incapable of execution, in consequence of uncertainty as to extent of assistance to be rendered, and because it involves discretionary power on the part of the intended trustee, which a court of equity has no rightful power to assume and exercise?    This is the question which has given us most trouble, and upon which we have spent much time in investigation and deliberation.

In Colton *v.* Colton, 127 U. S. 300, the will under consideration contained the following provisions:    "I give and bequeath to my said wife  .  .  all of the estate, real and personal, of which I shall die seized, possessed, or entitled to.    I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best."    The testator's widow failed and refused to make any provision for his mother and sister.    In proceedings instituted by them against her, the Supreme Court of the United States construed the precatory language as being, in effect, imperative, and held that the mother and sister of the testator " took under the will a beneficial interest in the estate given to the wife, to the extent of a permanent provision for them during their respective

lives, suitable and sufficient for their care and protection, having regard to their condition and necessities, and the amount and value of the fund from which it must come ; that it was the duty of the court to ascertain, determine, and declare what provision would be suitable and best under the circumstances, and all particulars and details for securing and paying it." In delivering the opinion, Mr. Justice Matthews said :   " But it is argued that the trust sought to be established under this will in favor of the complainants is incapable of execution, by reason of the uncertainty as to the form and extent of the provision intended, and because it involves discretionary power on the part of the trustee which a court of equity has no rightful power to control.    We have seen that whatever discretion is given by the will to the testator's widow does not affect the existence of the trust. [The same may be said in the case we now have under consideration.]    That discretion does not involve the right to choose whether a provision shall be made or not ; nor is there anything personal or arbitrary implied in it.    It is to be the exercise of judgment directed to the care and protection of the beneficiaries by making such provision as will best secure that end.    There is nothing left in this so vague and indefinite that it can not, by the usual processes of the law, be reduced to certainty.    Courts of common law constantly determine the reasonable value of property sold, where there is no agreement as to price, and the judge and jury are frequently called upon to adjudge what are necessaries for an infant or reasonable maintenance for a deserted wife..    The principles of equity and the machinery of its courts are still better adapted to such inquiries.    In the exercise of their discretion over trusts and trustees, it is a fundamental maxim that no trust shall fail for the want of a trustee, and where the trustee appointed neglects, refuses, or becomes incapable of executing the trust, the court itself in many cases will act as trustee."

In Dexter *v.* Evans, 63 Conn. 58 (38 Am. St. R. 336), it was held that " A will by which a testator makes a bequest to his wife in lieu of dower, and then gives her four separate legacies ' for her to help as she sees fit ' each of four persons named, at her decease the residue of said legacies ' to go to W.,' who will do by said four persons as he sees fit and see that they are comfortably provided for during their lifetimes, ' unless my wife sees fit to

make a will and dispose of the remainder of these legacies differently, then they go as she wills,' followed by a clause giving the wife another legacy to use as she might see fit in caring for C., must be construed as giving to the widow the five legacies as a trustee, and each upon separate trusts," and that if she declined either trust, the probate court could designate a successor to hold during her life, "whose duty it would then be to apply the money for the help of the beneficiaries, as the widow should from time to time direct;" and that if there was any failure by the trustee to exercise an honest discretion in favor of any beneficiary, such beneficiary could obtain relief in the probate court or in equity; and that "the mode of help extended in all cases [rested] largely in the discretion of the trustee subject to direction by the court." It will be observed that the language "for her to help as she sees fit" is as indefinite and uncertain, as to the amount of assistance to be rendered, as the language "so much more of it as to her may seem proper to be allotted to the assistance of," which is used in the will now under consideration. "Assistance" means "aid" or "help," and if it be contended that the word "assistance" is, in and of itself, an indefinite term, and one which can not be rendered definite and certain, when applied to given circumstances, by a resort to evidence, the same contention could be applied to the word "help," used in the Connecticut case. In the opinion in that case, Baldwin, J., after discussing the legacy given to the widow, "for her to use as she may see fit in caring for" a named person, said: "The language of the other legacies which provide for assistance to certain relatives of the widow is less decisive of the testator's intention, but we are of opinion that by these also he designed to create a trust estate of the same nature, and has used words sufficient for the purpose. Each legacy is given to the widow 'for her to help' the person designated, as (not if) she may see fit. That he contemplated her giving such help to some extent is evident from the bequest of 'the remainder and residue' of the legacies upon her decease." He further said: "It is to be presumed that these trusts will be wisely and fairly administered, but should there be any failure to exercise an honest discretion in favor of the respective beneficiaries, they could obtain proper relief either from the probate court or in an equitable action: In re Simon's Will, 55 Conn. 239, 243; Smith *v.*

Wildman, 37 Conn. 384; 1 Jarman on Wills, 696." While it will be seen that, in that case, each of the particular. legacies was bequeathed by the testator to his wife for her to help a designated person, and, therefore, it may be said that the sum given in trust was not itself indefinite and uncertain, yet it is evident that the amount to be applied from this sum, from time to time, by the widow, as trustee, to the help of the cestui que trust, was as indefinite and uncertain as the amount to be applied in the present case, by Mrs. Jackson, from the remaining income of the estate, to the assistance of the Princes. If in the case cited the court could undertake to determine whether the trustee, under given circumstances, exercised a proper discretion in helping the beneficiaries, it would seem that a court of equity could, upon the application of the beneficiaries designated in the testamentary provision now under consideration, determine whether Mrs. Jackson, under given circumstances, had exercised a proper discretion in reference to rendering assistance to them. And if in that case, upon the declination of the testator's widow to accept and execute the trust, the ·court, notwithstanding the fact that the manner of its execution was left to her discretion by the testator, would not allow such declination to destroy the trust intended by him, why should a court of equity, in this case, allow Mrs. Jackson's declination to destroy the trust intended by her husband for his sister's children, merely because the amount of such assistance was to be, from time to time, determined by her discretion? The rule in cases of this character is, that if the court is of opinion that a trust was intended by the testator, and such trust can, by any possibility, be executed by the court, the court will not allow the refusal of the person named or designated as trustee to destroy the trust intended. So we think that the ruling of the Connecticut case, that the declination of the person whose discretion was made by the testator the measure of the amount of help to be extended from time to time to the beneficiary should not be allowed to defeat the trust, was eminently sound.

In Broad v. Bevan, the report of which case is found under a citation in the case of Abraham v. Alman, 1 Russ. 511–512, a testator having bequeathed various legacies, and, among others, an annuity of 5·l to his daughter during her life, directed his son

(whom he afterwards made his executor) to take care of and provide for her; and, "subject as aforesaid," the testator gave to that son the residue of his real and personal estate.    The real estate of the testator having been sold and the proceeds thereof brought into court, the daughter presented a petition, in which she insisted that she was entitled to have a provision made for her out of the produce of the estate.    Mr. Russell, who appeared in opposition to the petition, after contending that the clause on which the petitioner rested her claim was "rather a moral injunction, having reference to personal care and protection, than a pecuniary bequest," said:    "Many events might occur, which would render the care and protection of the brother unnecessary, and even impossible ; but if the obligation which this clause is supposed to fix upon him is to vary with every variation in her circumstances, how can the court execute so vague and indefinite a trust ? "    He contended that it was impossible to tell from the will what the daughter of the testator. (admitting her to be entitled to some payment) was to receive ; and that all the authorities proved that where the amount is uncertain the bequest fails. But Sir Thomas Plumer, Master of the Rolls, was of opinion that the petitioner was entitled to have a provision made for her out of the residue, in addition to her annuity of 5 $l$, and granted an order " that it be referred to the master to inquire and state to the court, what would be proper to be allowed for the support and maintenance of the petitioner," from the date when the defendant ceased to maintain her, "and for the time to come during her natural life, or until the further order of [the] court."    In Foley v. Parry, 2 Myl. & K. 138, where the testator's words were, " and it is my particular wish and request that my dear wife and A. will superintend and take care of the education of D. so as to fit him for any respectable profession and employment," it was held that a charge was created on the interest taken by the testator's widow which could be made effectual by a court of equity. In Kilvington v. Gray, 10 Sim. 293, the testator, who had devised his freehold estates upon certain trusts, added a codicil to his will, in which he made a certain provision for the infant son of his relation, M. W., until the age of sixteen, and then provided as follows:    "I then leave him to the care of my trustees, to provide for him in some business or profession, and his future mainte-

nance out of my property." Shortly after the infant attained the age of sixteen, he presented a petition, praying that it might be declared that on attaining the age of sixteen he became entitled to receive, out of the testator's funded property, a sum sufficient for the purpose of providing for him in some business or profession, and to an annual allowance for his future maintenance, and that it might be referred to the master to inquire and certify what sum would be proper to be allowed for the purpose of so providing for him, and also what yearly sum would be proper to be allowed for his future maintenance, from the day he became sixteen years old, for the time to come, and out of what funds, and to whom the same ought to be paid during his minority. Counsel opposing the petition contended, "that there was no gift to the petitioner, but only a vague, discretionary power in the trustees, to provide for him; and that as the matter was left entirely to the discretion of the trustees, the court would not take upon itself the exercise of that discretion." But Vice-Chancellor Shadwell held to the contrary. He said : " The testator has imposed it, as a duty, on the trustees, to take care of the infant, and to provide for him in some business or profession, and his future maintenance; and the question is whether the court, when it sees that the testator has done so, and has pointed out the fund out of which the provision is to be made, does not take upon itself the exercise of the discretion which the testator has reposed in the trustees. Unless that be so, I do not see upon what principle my decision in Foley *v.* Parry could have been affirmed by the Lord.Chancellor." He accordingly sustained the prayers of the petition, and referred " it to the master, to inquire and state whether it [would] be fit and proper and for the benefit of the petitioner to place him out to any and what trade or profession, and with whom, and what sums of money [would] be fit and proper to be advanced on such occasion, and out of what fund the same ought to be paid ; " and that the master should "also inquire and state what yearly sum or sums [would] be proper to be allowed, for the future maintenance of the petitioner," from the date when he attained the age of sixteen years, " for the time to come, and out of what fund, and to whom during his minority the same ought to be paid."

In Pride *v.* Fooks, 2 Beav. 431, a testator authorized the trus-

tee to whom he devised his property, upon certain trusts, " to ap-
ply so much and such part of the income of his said estate as in
his judgment might be sufficient and proper, for the education
and maintenance of the children of his nephews and niece during
their minority, and for their future advancement in life. It was
held that, as to a daughter of the testator's niece, the power of
advancement continued, notwithstanding she had attained twen-
ty-one years of age and had married, and the Master of the Rolls,
Lord Langdale, said: "I conceive that there may be various
modes in which, notwithstanding her marriage, and without in-
terfering with the condition in which her marriage has placed her,
money may be efficiently applied for her advancement in life; and
although no specific mode of application has been suggested, and I
think for that reason I can not make a reference to the master
on the subject, yet it appears to me that I ought to declare that
notwithstanding her marriage, and the attainment of her age of
twenty-one years, she is, upon the construction of this will, enti-
tled to have a portion of the income of the accumulated fund ap-
plied for her future advancement, and I give her leave to apply."
Certainly the "future advancement in life" of a married woman
would seem to be, at least, as indefinite and uncertain a subject
for the exercise of discretionary power in administering a trust as
the "assistance" of designated persons can be; and the same may
be said in reference to the making of a provision for a minor
cestui que trust "in some business or profession." It was upon
the authority of the above-cited and other English cases, to which
he referred, that Vice-Chancellor Wigram, in Thorp v. Owen, 2
Hare, 608, 610, said: "Whatever difficulties might originally
have been supposed to exist in the way of a court of equity en-
forcing a trust, the extent of which was unascertained, the cases
appear clearly to decide that a court of equity can measure the
extent of interest which an adult as well as an infant takes under
a trust for his support, maintenance, advancement, provision, or
other like indefinite expression, applicable to a fund larger, con-
fessedly, than the party entitled to the support, maintenance, or
advancement can claim, and some interest in which is given to
another person." These observations were approvingly quoted by
Mr. Justice Matthews in Colton v. Colton, supra, who himself
well said: "It is quite true that where the manner of executing

a trust is left to the discretion of trustees, and they are willing to act, and there is no mala fides, the court will not ordinarily control their discretion as to the way in which they exercise the power, so that if a fund be applicable to the maintenance of children at the discretion of trustees, the court will not take upon itself, in the first instance, to regulate the maintenance, but will leave it to the trustees. But the court will interfere wherever the exercise of the discretion by the trustees is infected by fraud or misbehavior, or they decline to undertake the duty of exercising the discretion, or generally where the discretion is mischievously or erroneously exercised, as if a trustee be authorized to lay out money upon government, or real, or personal security, and the trust fund is outstanding upon any hazardous security." Again, he said: "Plainly, if the trustee refuses altogether to exercise the discretion with which he is invested, the trust must not on that account be defeated, unless by its terms it is made dependent upon the will of the trustee himself." In the present case, the provision for the children of Mrs. Prince is not, by its terms, made dependent upon the will of the trustee, Mrs. Jackson. It can not be wholly dependent upon her will, when the property is devised and bequeathed to her, for life, "with the condition" that "she shall apply," etc. It is not given to her with the condition that she shall apply if to her it may seem proper, but it is given to her with the condition that she shall apply so much of a designated portion of the income as to her may seem proper to be allotted, etc. This gives her no discretion to defeat the trust intended, but simply a discretion as to the manner of its execution; and if she refuses to exercise this discretion, the trust must not on that account be defeated, if the court can by any possibility enforce it. In 1 Perry on Trusts, § 249, it is said: "In all cases where parties have an *imperative power or discretion* given to them, and they die in the testator's lifetime, or decline the trust or office, or disagree as to the execution of it, or do not execute it before their death, or if from any other circumstance the exercise of the power by the party intrusted with it becomes impossible, the court will imply a trust, and will put itself in the place of the trustee, and will exercise the power by the most equitable rule. And the court will act retrospectively in executing these powers as *quasi* trusts; and although there may be great difficulties and impracti-

cabilities in the way, yet the court will exercise the powers and enforce the trust; for, if the trust or power can by *any possibility* be exercised by the court, the non-execution by the party intrusted shall not prejudice the party beneficially interested, or the *cestui que trust.*"

The power or discretion in the present case is, as we have seen, imperative; and, in view of the authorities which we have cited, we can not say that it is absolutely impossible for the court to exercise it. But in the court below it was not shown that the plaintiffs in error, or either of them, needed assistance, or had needed it since the death of the testator; nor do we think that it clearly appeared that Mrs. Jackson had positively declined to accept and execute the trust. In the written agreement between her and the other heirs at law of the testator, it was stipulated that Mrs. Barrow, as sole executrix, should have authority to carry out the provisions of the will relating to the Prince family, which shows that Mrs. Jackson, when this agreement was entered into, intended to transfer the discretion conferred upon her by the will to Mrs. Barrow. This she could not do, without the consent of all parties at interest, including the plaintiffs in error, who were not parties to this agreement; and, besides, Mrs. Barrow has since died. While Mrs. Jackson's attitude in the present case may be said to be inconsistent with an intention, or desire, on her part to accept and execute the trust, yet it is not clear that she will refuse to do so when she discovers that the prayers of the petition will not be granted, and the agreement between herself and the other heirs at law will not be confirmed, by a decree of the court. We think that the court should have denied the prayers of the petition, and decreed that the whole estate of the testator was given to Mrs. Jackson, for life, in trust for the purposes specified in the will, and should have given her, in the light of such finding, a reasonable time within which to either accept or renounce the trust; and, in the event that she did the latter, the court should have appointed a trustee to take charge of and administer the whole estate, under the direction of the court, in accordance with the testator's intentions as declared in his will. In this way the right of the plaintiffs in error, or either of them, to receive assistance, during any year while the life-estate continues, if the same should be needed, and the income from the

estate for such year will warrant it, would be preserved; and they, or either of them, could apply to the court for the same, and the court could give such direction in the premises as, in its opinion, the circumstances shown should warrant.

*Judgment reversed.    All the Justices concur, except Cobb, J., disqualified, and*

SIMMONS, C. J., and CANDLER, J., dissenting.    This case turns upon the question whether the will of the late General Henry R. Jackson created a trust in favor of the plaintiffs in error, Basilene Prince, Jacqueline P. Thomas and Henry R. J. Prince, children of the testator's sister, Mrs. Sarah M. R. Prince, which is enforceable in a court of equity.    If it did create such a trust, then the decree of the court, declaring that they "are not entitled to the claim set up in their answers, or to any judgment or relief against the estate of the testator, Henry R. Jackson, or the executor of his will," and ratifying the agreements made by his widow and other heirs at law as to the disposition of his estate, was wrong. If it did not create such a trust, the plaintiffs in error have no legal reason to complain of the decree.    While we think it was clearly the intention and purpose of the testator that the children or grandchildren of Mrs. Prince should, if necessary, be assisted to some extent, by Mrs. Jackson, from the income of his estate remaining after his wife and sister had been provided for therefrom as he directed, yet, in our opinion, the clause of the will providing for such assistance is too vague, indefinite, and uncertain to create a trust enforceable in a court of equity.    To begin with, the language, "so much more of it as to her may seem proper," when applied to any purpose whatever, is very indefinite and uncertain, as the amount is left entirely to the discretion of Mrs. Jackson; and the words, "to be allotted to the assistance of," etc., which immediately follow, and disclose the purpose for which she is to exercise this discretion, render the intention of the testator still more obscure and uncertain, for he could not well have used a more indefinite term than the word "assistance."    It evidently was used in the sense of aid or help; so that the clause seems to mean that Mrs. Jackson, from the income remaining undisposed of after she has received her portion thereof and has provided from the balance for the support of Mrs. Prince, shall help the Prince children or grandchildren to the extent that to

her may seem proper. If the testator, in this clause, had used the word "support," as he did when he made the provision for his sister, Mrs. Prince, or the word "maintenance," then it may be that a court of equity would declare a trust to exist, and undertake, through its usual processes, in the light of all the pertinent facts and circumstances adduced by evidence, to ascertain and determine how much should be taken from the fund remaining after Mrs. Jackson's portion of the income was separated from the whole, for the purpose of supporting or maintaining the children of Mrs. Prince. For while the words " support," " maintenance," " education," and the like are in themselves indefinite as measures by which to fix the amount of money to be taken from a given fund, in cases of a character similar to this, each, as a measure of amount, indicates a sum which is approximately ascertainable by a resort to the relevant facts and circumstances of the particular case. See, in this connection, *Hart* v. *Hart*, 81 *Ga.* 785; *Tate* v. *Chandler*, 115 *Ga.* 462. Each indicates an amount which can neither be divided, nor even materially reduced, without becoming too small to fill the measure of the descriptive term. For instance, if in a given case $1,000 is necessary for "support," " maintenance," or " education," $500 will not answer the purpose indicated by the term employed, nor will $900. But when we come to consider the term " assistance," we find a term which, as a measure of quantity, is exceedingly vague, indefinite and uncertain, and which can not be made definite and certain by a resort to evidence. Within the term " assistance" may be comprehended many degrees, and yet each, when taken separately, may fill the measure of the term. In a given case, $5,000 may not amount to more than " assistance," and yet, in the same case, two thousand, one thousand, one hundred, or fifty dollars, or even less, may be " assistance." A direction to one person to apply so much of a given fund as to her may seem proper to be allotted to the assistance of other designated persons gives a wide field for the exercise of the discretion conferred, too wide, we think, for a court to undertake to say how much the directing party intended, under given circumstances, should be so applied. The field is not only wide by reason of the indefiniteness and uncertainty of the scope of the term " assistance," but it is rendered still wider by the fact that the assistance is " to be allotted" among several, thus giving

discretion not only as to the aggregate sum to be used for the purpose of assisting the intended beneficiaries, but also discretion as to the proportions in which it shall be distributed among them.

Again, the term "assistance," as here used, seems to imply that there must exist a necessity for help, especially in view of the fact that the testator's own children and grandchildren were to receive nothing from the income of his estate except the residue, after Mrs. Jackson had exercised the discretion conferred upon her by this clause of the will. So we think that Mrs. Jackson's discretion was to be exercised in determining when the beneficiaries, or any one or more of them, needed help, and the extent to which it should be rendered in each case. That the testator intended to give his wife a wide and untrammelled discretion in reference to the provision which he made for the benefit of the children or grandchildren of Mrs. Prince we think is evident, not only from the language which he employed when conferring it upon her, but also from the fact that in the clause immediately preceding the one which we are construing, when he was providing for Mrs. Prince, he limited Mrs. Jackson's discretion as to the amount of the income to be used to " such part of it as [might] be necessary to the support of" Mrs. Prince. He knew and appreciated the difference between the words "support" and "assistance," and his change from the one to the other, in these two clauses placed in juxtaposition to each other, indicates his intention as to the different degrees of discretion which Mrs. Jackson should exercise. In the one he gave her a discretion so limited and defined as to render it practicable for a court of equity to exercise it, in the event she refused to do so; in the other he gave her a discretion so broad and unfettered as to prevent the substitution in its exercise of any other mind for hers. Another circumstance to be considered is, that while the provision for the support of Mrs. Prince was to be annually made by Mrs. Jackson from the income of the estate in excess of Mrs. Jackson's portion, so long as they both lived, such support was not contingent upon the life of Mrs. Jackson, but was to be continued after her death, if Mrs. Prince survived her. But the assistance which he directed his wife to give to the Prince children or grandchildren

.was not only dependent upon her discretion while she lived, but was to be no longer rendered when she, to whom he had confided this discretion, by reason of death could not longer exercise it. It would seem that he intended that when death should terminate her discretion in the matter, all power to assist them from his estate should be terminated also. It seems hardly probable that if he had intended to create a trust for the assistance of his nephew and nieces, *or their children,* he would have made its duration dependent entirely upon the life of his wife, who, in the natural order of things, might follow him to the grave at any moment. The testator made the discretion of his wife the only measure of his intention as to the amount of assistance to be rendered from the income of his estate to the children or grandchildren of Mrs. Prince; and, in our opinion, if she chooses to not take under the will, and thus, in effect, declines to accept the responsibilities and exercise the discretion which he conferred upon her, no court should undertake to make its own discretion the measure of his testamentary intentions in this matter. The particular clause which we have been considering created no trust which a court of equity can enforce. We think the judgment of the court below should be affirmed.