19897. ROCKEFELLER *et al.* v. FIRST NATIONAL BANK OF BRUNSWICK, Trustee, *et al.*

ARGUED NOVEMBER 12, 1957—DECIDED JANUARY 20, 1958.

*B. D. Murphy, James N. Frazier, E. E. Dorsey, Powell, Goldstein, Frazer & Murphy, Nightingale & Liles, Bernard Nightingale, Shouse & Barker, Weldon Shouse,* for plaintiffs in error.

*William B. Watson, Jr., Beer, Richards, Lane, Haller & Buttenweiser, Connerat, Dunn, Hunter, Cubbedge & Houlihan, Shearman, Sterling & Wright, Malcolm Maclean, Bouhan, Lawrence, Williams & Levy, David H. Gambrell, Spalding, Sibley, Troutman, Meadow & Smith, Gowen, Conyers, Fendig & Dickey, Reese, Bennett & Gilbert, Shouse & Barker, Jos. W. Drake, Robt. W. Harrison, Jr., contra.*

WYATT, Presiding Justice. Reference to the opinion rendered when this case was previously before this court will disclose that it was there determined that the petition was sufficient to present a case in equity; that the will of Mrs. Lucy C. Carnegie did not expressly prohibit a sale of the property in question; that the lease in question amounted to a sale; and that the act of the General Assembly, Ga. L. 1953, Jan.-Feb. Sess., p. 44, is not applicable, and its constitutionality need not be passed upon; and that the Superior Court of Camden County has jurisdiction of the case. Under repeated rulings of this court, the questions thus decided became the law of the case and can not be changed or modified in the instant case. The only question, therefore, now before this court is whether or not under the evidence the trial judge was authorized under the previous decision of this court, to require the execution of the lease of the property.

Before approaching this question, we deem it wise to quote fully what this court said in the previous opinion, (p. 503), on the question of the sale of the property, as follows: "Under Item One of the will of Mrs. Carnegie, she left her Cumberland Island real estate in trust during the life of the survivor of her children therein named, and provided a substantial income by Item Two of the will, to be used to maintain the property, and directed her trustees to permit those of her children who desired to do so to occupy the land free of rent. It was clearly not the intention of the testatrix that this property should in all events be held until the death of the last surviving child. On the contrary, she provided two ways by which her children could terminate the trust and take the corpus themselves. The first of these, Item One (c), provides that her children could claim possession of the corpus and terminate the trust by unanimous agreement for a division of the property in kind, in which event each received fee-simple title to his or her portion of the land.

The second method for terminating the trust is contained in Item One (d), which provides that, if at any time a majority of her children then living who had not disposed of their interest under Items One (a) and One (b) requested the trustees to sell *all* or *any portion* of the trust property, it thereupon became the trustee's duty to comply therewith, the proceeds derived from the sale to be paid to her children then living, the descendants of deceased children, or to the purchasers of the interest of any of her children who had sold their interest in the trust lands under the authority so to do conferred by Items One (a) and One (b).

"Subparagraphs (e) and (f) of Item One further demonstrate that the testatrix intended to provide for the sale of the Island property in whole or in part, subparagraph (e) providing that the power of sale given the trustees might be exercised at public or private sale 'and upon such terms of sale as their best judgment may dictate, without the necessity of an order from any court,' and subparagraph (f) provides that 'In the event the trust herein created for said Island property, or *any portion thereof*, has not terminated before the death of the last survivor of my said children, the said trust shall then terminate and the whole or any portion thereof remaining unsold shall be vested, but not before, absolutely in such persons' as are therein described as remaindermen. . . .

"Similar provisions are found in Item Two which established the trust of the Carnegie Building. There she anticipates a sale of the Island property, and provides for the subsequent sale of the Carnegie Building and for a disposition of the proceeds. Then by paragraph two of Item Six the testatrix provided: 'In all cases where I have authorized and directed my executors as trustees to make the sale of real estate, including my Island property and the 'Carnegie Building' and the real estate upon which the same is located, I authorize my trustees to lay out said real estate in such plan as they may deem most advantageous for its sale and to acquire or create such ways and other easements therein or in relation thereto as seem to them advantageous, and to make sale of such real estate without any proceedings in court for that purpose, and to convey the same for such price, for such covenants of title and upon such terms

of payment or security as they may deem to be for the best interest of my estate, and to receive and receipt for the purchase money and proceeds of sale without any duty arising on the purchaser to see to the application of the purchase money.'

"Under the foregoing provisions of the will there can be no doubt that Mrs. Florence C. Perkins, the only surviving child of the testatrix, is clothed with the right to require the trustee to sell *all* or *any portion* of the Island property, but having been adjudged incompetent, she is not capable of making that election for herself. Under such circumstances, a court of equity, in the exercise of its broad, comprehensive, and plenary jurisdiction of trusts and the estates of wards of chancery, may make the election on her behalf, if it finds such to be to her best advantage, and to the best interest of the estate."

This language simply means that the will in question did not "in all events" prohibit a sale or lease of the property, but that, if sold or leased, it must be done under the provisions of the will and in accordance with its terms. The entire testamentary scheme of the will bears out this construction of its terms. It is clear that the testatrix did not intend that the property in question should be used to provide an income for the beneficiaries, but that it was to be retained by the trustees for the use of the beneficiaries for residential and recreational purposes, unless sold in accordance with the provisions of the will. Furthermore, if any of the children should, under the terms of the will, sell his or her share in the property to a third party, the purchaser could not demand a division of the property so long as any of the children of the testatrix were in life. So clearly the intention of the testatrix was that this property should be kept together so long as any of the children of the testatrix were in life to be used by them, not as a means of income, but as a place of residence and recreation. The testatrix did, however, under certain conditions provide how the property could be sold.

The provisions of the will under which the lease or sale is sought to be executed in the instant case reads as follows: "If at any time a majority of those of my said children then living (other than those who may have disposed of their interest as provided in subsections (a) and (b) of this Item) shall in writing request my said Trustees to sell the said Island property

or any portion thereof, the Trustees shall comply with such request as soon as can be done to advantage, and the proceeds of the sale shall be paid as received to my said children then living, and to the children of such other of my said children as are then dead who have not heretofore sold their interest in said property, the children of such deceased children taking the parent's share, and also the purchaser of the interest of any one or more of my said children who may have disposed of his or her share as described in sub-sections (a) and (b) of this Item, in such proportions as said interest may be entitled to."

Clearly, under this provision of the will, the trustees could not lease or sell the property or any portion thereof unless requested in writing to do so by a majority of the living children of the testatrix. Only one of the children of the testatrix is in life and she has been adjudged incompetent, and therefore can not make the request.

Upon the trial of the case, it appeared that on June 21, 1947, Florence Carnegie Perkins, the only child of the testatrix now living signed and delivered to the trustee the following instrument in writing: "Whereas, by her last will and testament my late mother, Lucy C. Carnegie, of Pittsburg, Pennsylvania, created certain trusts for the benefit of myself and others and gave me individually powers, in conjunction with others from time to time surviving, or alone if sole survivor, to request the trustees under said Will to sell certain properties constituting part of the corpus of said trusts and thereupon under the provisions of said Will the proceeds of sale were to be paid to myself and others in certain proportions therein specified and:

"Whereas, in view of Section 811 (f) of the Internal Revenue Code as amended by Section 403 of the Revenue Act of 1942, as amended, and Section 1000 of said Code, as amended by Section 452 of the Revenue Act of 1942, as amended, I desire to release said powers and all other powers granted to me individually under said Will, which are in substance and effect a power to appoint,

"Now, therefore, I, Florence Carnegie Perkins, do hereby renounce, relinquish, surrender, disclaim and irrevocably release the said powers to request said trustees to sell any property belonging to the trust estate and any and all other powers of

appointment or powers which are in substance and effect a power to appoint, granted, to me individually in and by said Last Will and Testament of Lucy C. Carnegie."

It is undisputed that, at the time the above instrument was executed, Florence Carnegie Perkins was not incompetent, and that she is the only surviving child of the testatrix. The question is therefore presented whether or not the trial court was authorized to order the execution of the lease in view of this instrument. We conclude that the court had no such authority, for the very good reason that the condition precedent to a sale of any of the property did not exist and can not now ever exist under the terms of the will. The only living child of the testatrix, for reasons sufficient to herself, for a valuable consideration, and at a time when she was competent to act, had relinquished her right under the will to request a sale of the property. She freely and voluntarily placed herself in a position that she could not request a sale of the property. Certainly the court can not do for the incompetent party something that she, if competent, could not do herself. This being true, under the terms of the will, the property in question can not be sold so long as this child of the testatrix is in life.

Counsel for the defendants in error cite numerous decisions dealing with trusts in general, to the effect that, when there is no power of sale provided in the trust instrument, the court may order a sale to carry out the purpose of the trust. Here we are dealing with a will, and the power of sale is an exception to the general testamentary scheme of the will. It is certainly not necessary that this sale be made in order to carry out the clear intention of the testatrix. Defendants in error cite *Gilmore* v. *Gilmore*, 208 *Ga.* 245 (65 S. E. 2d 813). We deem it sufficient to say that in that case no will was before this court for construction, while in this case the will is before the court for construction.

The rule to the effect that trusts will not be allowed to fail for want of a trustee clearly has no application to the facts in the instant case, for the reason there is a trustee and no failure of the trust will result. Nothing in *Mastin* v. *Barnard*, 33 *Ga.* 520, or in *Prince* v. *Barrow*, 120 *Ga.* 810 (48 S. E. 412), is in conflict with what has been said above. It is contended by de-

fendants in error that the power conferred by the will, to the effect that a majority of the living children of the testatrix could in writing request the trustee to sell all or any portion of the property is a power coupled with a trust, and for that reason can not be relinquished. The authorities cited, most of which are from other jurisdictions, do not sustain this contention. In the instant case, a trust was set up by the terms of the will, which, as we have previously stated, had for its purpose the keeping together of the property as a place of residence and recreation for the children of the testatrix so long as any of them lived. Then, as an exception to this testamentary scheme, it was provided that a majority of the living children might in their discretion request a sale of the property or any portion of the same. The trustee had no voice in this decision. This we construe to be a purely personal right given to the children, and was in no way coupled with a trust. We think that the language of Daniel v. Brown, 156 Va. 563 (6) (159 S. E. 209), to wit, "of course, if it be a mere naked power, purely discretionary with the donee, equity will not compel or control his discretion, or exercise it in his place," is applicable to the instant case. Here the power was a mere naked one, purely discretionary with the donee, and was exercised by the donee when she was capable of acting, and the courts are now without authority, under the facts of this case, to change or modify what she did.

The ruling here made being completely controlling, it becomes unnecessary to consider the other questions raised. From what has been said above, it follows, the judgment complained of was error.

*Judgment reversed. All the Justices concur.*