DRENNEN v. HEARD et al.

(District Court, N. D. Georgia. May 18, 1912.)

No. 68.

1. TRUSTS (§ 11*)—PURPOSE—TESTAMENTARY TRUSTS.

A provision of a will by which the testator directed his executors to divide his estate, except his home and contents, which were devised to. his wife for life, as nearly as convenient into two equal parts and to convey the first half, which should consist as far as practicable of stocks, bonds, and cash, to themselves as trustees to manage and collect the income therefrom during the lifetime of his wife and to pay to her so much of the income as was necessary "for her support, benefit and comfort," with remainder over of the trust estate with all accumulations at her death to other legatees named, created a valid trust under the law of Georgia, which on the failure of the trustees to qualify would be administered by a court of equity.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 9; Dec. Dig. § 11.*]

2. WILLS (§ 663*)—CONDITIONS SUBSEQUENT—CONSTRUCTION.

A will, after creating a trust for the benefit of the testator's wife during her lifetime, provided that the proceeds of a certain life insurance policy payable to her should be turned over by her when collected to the executors and by them paid to the trustees to become a part of the trust estate, and that, if she should "fail and refuse to deliver the insurance money to the executors," then all the bequests previously made to her were revoked and annulled and the entire estate should go to others named. Held, that the retention of the insurance money by the widow with the consent of all of the remaindermen and alternative legatees, and no demand having been made for it by the executors, was not such a failure and refusal to turn it over as worked a forfeiture of her interest under the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1559; Dec. Dig. § 663.*]

3. WILLS (§ 665*) — CONDITIONS SUBSEQUENT — CONSTRUCTION — CONTEST OF WILL.

Under a condition in a will that, if the wife of the testator should "take any legal steps to set aside this will and shall not succeed in such endeavor, then all the bequests to her are revoked and annulled," and in lieu thereof she should receive $500, and the property bequeathed to her should go to others named, the widow did not forfeit her right to such bequests by filing a caveat against the will which was voluntarily withdrawn 10 days later and before any hearing thereon.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1561–1563; Dec. Dig. § 665.*]

4. TRUSTS (§ 147*)—RIGHTS OF BENEFICIARY—PURCHASE BY REMAINDERMEN.

A testator by his will directed his executors to convey to themselves as trustees substantially one-half of his estate to be held and managed by them during the lifetime of his wife and to pay the income to her so far as necessary for her support, etc., with remainder at her death to

complainant and five others share and share alike, provided complainant should at that time have a child living; if not, the same to be divided among the other five. Shortly after the testator's death, the widow sold and conveyed her interest in the trust estate to the five remaindermen other than complainant, in consideration of a lump sum in cash which was paid from such estate; the executors thereupon not qualifying as trustees. *Held* that, the parties to such sale and purchase being sui juris, the transaction was valid as between them and also as to complainant, whose contingent interest was not affected thereby, but would be protected by a court of equity, through a trustee or otherwise, until her right thereto under the will could be determined.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 192; Dec. Dig. § 147.*]

In Equity. Suit by Miriam Drennen against Frank A. Heard and R. E. Clements, as executors of the last will of W. L. Tillman, deceased. On exceptions to master's report. Exceptions overruled.

The bill was filed January 10, 1910, by Miriam (Minnie) Drennen, a citizen of the state of Arkansas, against Frank A. Heard and R. E. Clements, as executors of the last will of W. L. Tillman, who died June 3. 1906. The following findings are taken from the report of the master:

### Conclusions on Demurrers.

Taking the opinion of the court, rendered at the time an injunction pendente lite was granted, in connection with the reference, disposition must first be made of the demurrers. These were general and special. At the opening of the case before the master, counsel for complainant took the position that the filing of the answer overruled the demurrers, and cited authorities to sustain their position, among others, Bryant Bros. Co. v. Robinson, 149 Fed. 321, 79 C. C. A. 259, and Crescent City, etc., Co. v. Butchers Union Live-Stock, etc., Co., 12 Fed. 225.

While this is undoubtedly the rule, I do not think the court intends by such to preclude a defendant from his defenses by demurrer, when, under an order of reference, it becomes necessary, as in this case, in order to perfect the pleadings, that an answer be filed after the demurrers. Though defendants may have filed an answer subsequent to the filing of their demurrers, it should not be considered or regarded as filed until disposition of the demurrers by the master, as directed in the order of reference. The court disposed of the special demurrer to the jurisdiction, and stated that he would refer the other grounds and all other questions to the master for consideration. This certainly did not preclude defendants from filing answer to perfect the case for a hearing.

The first, second, and third grounds of demurrer, while stated differently, are practically a general demurrer to the bill, in that such a case has not been stated as entitles complainant to relief in a court of equity. In the opinion of the master, these are not well taken and the same are overruled.

The remaining grounds are special, and were not insisted upon by counsel for defendants, but were withdrawn; they stating that the questions raised thereby were made by the defense set up in the answer.

### Findings of Fact.

#### I.

So much of the will of the testator as is necessary to be referred to in the adjudication of the questions at issue is here set out, either in substance or in full, and I find the same as true:

By item 2 he gave to his wife, Hattie Tillman, for life, his dwelling and lot, being his home, and contents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

By item 3 the executors were directed, after payment of debts, to divide the balance of the estate (the home place and contents excepted) into two equal parts.

Item 4 named R. E. Clements, Dr. C. T. Drennen, and Frank A. Heard trustees for his wife, Hattie Tillman, and these, the executors, were to convey to themselves as trustees for the use and benefit of his wife, Hattie Tillman, for and during her life, the dwelling and contents and one-half of the balance of the estate, after the division had been made as provided in item 3. The trustees were to apply the rents and profits of this half, or so much as might be necessary, to the support, benefit, and comfort of the cestui que trust during her life.

Item 5 gave the remainder over of the trust estate and all unexpended accumulations, after the death of the wife, to the children of Mrs. A. A. Heard (Dr. Geo. P. Heard excepted) and to Minnie Drennen, formerly Minnie Ryan, provided the said Minnie should have living, at the death of Mrs. Tillman, children born to her, otherwise she was not to share in the property mentioned in this item. If no children were born to the said Minnie Drennen, or were not in life at the death of his wife, the whole of the remainder over at the death of the wife was given to the Heard children above named.

In item 6 he directed certain specific legacies (not necessary here to refer to) to be paid out of the other half of the estate, and the remainder of this half he gave unconditionally to the Heard children (Dr. Geo. P. Heard always excepted) and to Minnie Drennen, share and share alike; but Minnie Drennen was to be charged with about $6,000 advancement and any future advancements.

Items 10 and 11 must be taken in connection with items 4 and 5, creating the trust. In these items, 10 and 11, testator directs that the trust estate, other than the dwelling, should, as far as practicable, consist of stocks, bonds, and cash, and the other half of the estate should consist of realty as near as practicable. The trustees were given power to sell and to reinvest. R. E. Clements was named as trustee, being brother of Hattie Tillman, so that he could look specially after the interest of his sister. Frank A. Heard was required, as trustee, to give a bond in the sum of $10,000, and the bonds of the other trustees were to be fixed by proper tribunal. The trustees were required to make inventory and returns to the court of ordinary of Muscogee county, regardless of where the property was located and not elsewhere. They could fill vacancies in the trusteeship.

Item 12 named the executors and defined their powers, which were full. Bond was required.

Item 13 dealt specifically with a certain life insurance policy payable to his wife and children. He stated that for convenience it was his purpose to make his wife sole beneficiary, and, as soon as the proceeds of the policy should be paid to her, she should turn over the same to the executors to become a part of the estate, and the executors were to pay it over to the trustees of Hattie Tillman to be invested in stocks and bonds or realty, or loaned at interest properly secured, and the income was to be expended for the support, benefit, and comfort of Hattie Tillman during the term of her natural life, and at her death the corpus and all unexpended balance of the profits therefrom was to go to the Heard children. Should the wife fail and refuse to deliver the insurance money to the executors to become a part of his estate, then he revoked and annulled all the bequests previously made to her, and all the property and rents and profits therein so bequeathed was to go to the Heard children and Minnie Drennen, share and share alike.

In item 14 testator provides that, should his said wife take any legal steps to set aside his will and shall not succeed in such endeavor, then all the bequests to her are revoked and annulled, and in lieu thereof he gives her $500, and all the property bequeathed to her, except the $500, shall go to the Heard children and Minnie Drennen, share and share alike.

The will, dated April 19, 1906, was duly signed and properly attested. On May 23, 1906, testator attached a codicil, by the second item of which he

directed that the household and kitchen furniture bequeathed to his wife in connection with the dwelling could, at her option, be sold, the proceeds to be merged into the trust estate subject to the same uses and limitations as other property constituting the trust estate. A second codicil of June 1, 1906 was attached, but in no way bears upon the issues here to be considered.

This bill is seeking a money decree against the executors: (1) For the balance alleged to be due complainant for the one-sixth share of what is designated as the second half of the estate, devised to the Heard children and complainant after payment of debts and certain minor legacies. (2) For a one-sixth share of the first half of the estate, or that one-half which was apportioned for the widow's benefit. This last is asked because the widow took legal steps to set aside the will by filing a caveat thereto, and did not succeed in such endeavor, and because she collected the proceeds of a certain life insurance policy, and failed and refused to turn the same over to the executors to become a part of the testator's estate.

The defendants deny complainant's right to decree on the grounds: (1) That complainant is estopped from asserting that the conditions of the will had been broken because she, through her agent, participated in the transactions, and therefore cannot deny their validity. (2) That the widow being sui juris, no trust could be created for her benefit, so that, under the will, she took a legal estate which she was free to dispose of. (3) That the proceeds of the insurance policy belonged to the widow, who was under no obligations to observe the requirements of the will that the fund should be turned over to the executors to become a part of the estate, and further that, as complainant had no interest in this fund, she cannot be heard to question its application.

## II.

The admitted facts, gathered from undisputed documentary evidence submitted, and so far as necessary for determination of the issues made by the bill, are here briefly stated, and I find as follows:

W. L. Tillman departed this life June 3, 1906, having left his will as heretofore set out, and leaving a large estate, which was duly appraised. This consisted of his house and lot in the city of Columbus, Ga., of the value of $5,500, and other lands in the state of Georgia of the value of $26,800, lands in Alabama of the value of $1,000, and in Mississippi of the value of $21,000. Total in realty of $54,300. Personal property, in notes, bonds, stocks, cash, live stock, and other similar assets of the value of $328,011.28. Total in realty and personalty of $382,311.28.

The will was probated in common form on June 7, 1906.

The debts and special minor legacies (not here necessary to refer to) have all been paid. He named as his executors his nephew, Frank A. Heard, one of the legatees, R. E. Clements, a brother of his wife, Mrs. Hattie Tillman, who was another legatee, and Dr. C. T. Drennen, husband of Miriam (Minnie) Drennen, who was another legatee. The two first-named executors qualified, and are acting as executors in administering the estate. Testator left no children, or descendants of children, and his sole heir at law was his wife, Mrs. Hattie Tillman. The nephews and nieces referred to in his will as beneficiaries, and designated as children of Mrs. A. A. Heard, are Frank A. Heard, W. T., Ailee Heard, Ethel Heard Deloffree, and Mabel Heard Clarke. The other remaining legatee (other than certain specific legatees not necessary to be considered in this connection) was Miriam Drennen (Minnie Ryan), the complainant, who was taken at a very tender age by testator, treated as his daughter, reared to womanhood, and remained a member of his family till her marriage to Dr. C. T. Drennen. All of the above-named legatees are sui juris; Ailee Heard, the only minor legatee at death of testator, having attained majority before filing of the bill.

After the probate of the will in common form, and before letters testamentary issued, Mrs. Hattie Tillman, on July 2, 1906, filed her caveat and objected to the admission of the will to record. The grounds stated in the caveat are, in substance: (1) Unsound mind of testator; (2) undue influence; (3) improper execution; and (4) effort in one item (twelve) to dispose of

198 F.—27

property belonging to caveator. This caveat is signed by "Stallings, Nesmith & Drennen and T. T. Miller, Attorneys for Caveator, Mrs. Hattie Tillman." It bears the following indorsement: "This caveat was filed in office July 2, 1906, but was withdrawn by consent. Wm. Redd, Ordinary, Muscogee County, Georgia."

On July 12th thereafter the will was probated in solemn form and admitted to record, the order reciting that the same was done on the petition of R. E. Clements, Frank A. Heard, and Dr. C. T. Drennen, after notice to the widow, Mrs. Hattie Tillman, sole heir at law of testator. The order directed letters testamentary issue to R. E. Clements and Frank A. Heard on their giving bond in the sum of $200,000. The bond was duly filed.

On March 21, 1907, Mrs. Hattie Tillman conveyed to Ethel Heard Deloffree, F. A. Heard, Mabel Heard, W. T. Heard, and Ailee Heard, in consideration of $60,000, all of her right, title, and interest which she has under and by virtue of the will of W. L. Tillman, deceased, and all of her right, title, and interest in and to the realty and personalty of every kind and character belonging to the estate of said W. L. Tillman. Then follows a description in detail of the property conveyed and to the same is conveyed an absolute title in fee, with warranty and with limitations only as to the house and lot known as the Home Place, on Broad street in Columbus, Ga., and as to that the grantor reserves and is granted the use and occupancy thereof as a home for and during her natural life; the same not to be used for any other purpose or otherwise disposed of. This deed is regularly executed and recorded, and is found in documentary evidence.

Contemporaneously with the foregoing deed, Mrs. Hattie Tillman executed and delivered to the same grantees a bill of sale for the same consideration of $60,000 conveying all her right, title, and interest as a legatee in and to all of the personal property belonging to the estate of testator. Then follows a detailed statement of this personalty, being stocks and bonds.

On December 3, 1906, the two executors, Heard and Clements, divided the estate into two equal parts as directed by item 3 of the will, and the one-half, representing Mrs. Tillman's share and consisting of the home place and of cash, stocks, and bonds and notes, was valued at $193.905.64, and of this the home place was valued at $5,500, leaving balance in above item, $188,405.64. On this return is the statement by the executors that said one-half has been sold to the children of Mrs. A. A. Heard (Dr. Geo. P. Heard excepted).

On July 12, 1906, the Heard children receipted the executors, Clements and Heard, for $20,000 of the above, and on January 28, 1907, they receipted for $40,000 of the above, in both of which receipts is reference to a writing of July 12, 1906 (called a "tentative agreement").

On January 28, 1907, Mrs. Hattie Tillman receipted Heard and Clements, executors, for the $60,000, purchase price of her entire interest in the estate of her late husband, W. L. Tillman, sold by her to the Heard children, which amount, the receipt states, was paid her either as legatee under the will of her said husband, heir at law and for dower and year's support, each and all embraced in the sale referred to and in consideration for the same and the insurance policy, proceeds of which was $5,000. This receipt refers to the agreement of sale of July 12, 1906.

### III.

The oral evidence discloses that, two days after the death of testator, his will was opened and read in the presence of the executors, Heard, Clements, and Drennen, Hattie Tillman, the widow, and the complainant. All these persons testify that, with the exception of Heard, all present expressed dissatisfaction at the terms of the will, especially with the condition put upon the widow as to contesting the will and as to disposition of the insurance policy.

The evidence shows that Mrs. Drennen was taken by testator and his wife when three years old and was treated as a daughter; that she lived with these foster parents till her marriage to Dr. C. T. Drennen, in 1898, and knew towards them no other relation than that of parent and child. She came to see them in March preceding the death of testator, and left

Columbus about June 20, 1906, and went to Hot Springs, Ark. She admitted she discussed the provisions of the will with her husband, but denies positively that she instigated the filing of the caveat. She states that she did not suggest or originate the idea of attempting to break the will, but that R. E. Clements did, and she concurred as being for the best interest of her "Mamma," as she called Mrs. Tillman, and that she desired that "Mamma" be given what she wanted. She swears positively (page 106 of the record of evidence): "I have never constituted Dr. Drennen as my agent to represent me in any shape whatsoever as regards this will; never authorized him to negotiate with the Heard children about the sale of her interest, and never knew about the negotiations and never ratified anything he said or did." Dr. Drennen's evidence was to the same effect with reference to the question of agency. Mrs. Drennen states that Clements, one of the executors and trustees, stated to her: "Now, Minnie, don't you do a thing. You just let it alone. I will do the best I can for your Mamma, and I will take care of you." (Page 110 record of evidence.) On cross-examination she stated that she did not care to have the will set aside, but wanted done what was for the best interest of Mamma and she left it with Clements. All through her testimony runs the idea that she wanted the interest of her mother considered. While there is no direct evidence by her that she desired her mother to take the proceeds of the insurance policy, the evidence generally shows that it was conceded that Mrs. Tillman ought to have the insurance money. Some of the witnesses state positively that there was a general understanding that she need not pay this over to the executors. They and she testify no demand was ever made for it, and no refusal on her part to pay it over.

Dr. Drennen, husband of complainant, testifies that J. L. Drennen, his brother, was told by him that he wanted him to take such action as would best subserve the interest of Mrs. Tillman.

J. L. Drennen, an attorney of Birmingham, Ala., and a member of the law firm who, with T. T. Miller, attorney for Mrs. Tillman, filed the caveat, testified at length as to the facts of filing the caveat. It appears from the evidence that he was summoned to Columbus by his brother, Dr. Drennen, the day after the will was read, for the purpose of conferring with all the executors about employment of local counsel and executing the provisions of the will, and that he performed some service in this particular in the employment of Carson & McCutchen to represent the executors; that he returned to Birmingham and subsequently returned to Columbus and had interviews with Mrs. Tillman. It is not clear from his testimony that he was employed by her as counsel to file the caveat. He went, however, to confer with T. T. Miller, attorney, at suggestion of Clements (Record, p. 11). This witness states (page 12) that Mrs. Tillman was told by him that Mr. Miller agrees that "it is safe for you to go ahead, and he and Mr. Clements decided that they would file the caveat," and her reply was: "Well, Dick, I will leave that to you and Bob. Do whatever you think best for me." The caveat was filed that day (July 2, 1906) signed by Stallings, Nesmith & Drennen and T. T. Miller, attorneys for Mrs. Tillman. The evidence shows that this was subsequently withdrawn (July 12, 1906) by consent. No contest was had therein and no adjudication of the issues raised by the caveat. The will was at once admitted to record in solemn form.

This witness also testifies that Mrs. Drennen knew nothing of the settlement with the Heard children nor of the caveat and had nothing to do with either. He also testifies (page 15) that Mrs. Tillman stated to him just after July 12, 1906—referring to the "tentative agreement"—that she "was broken all up about the settlement, but that Bob (meaning her brother, R. E. Clements) thought it was best." And while the evidence generally leads to a strong implication that J. L. Drennen was looking after the interest of complainant and of his brother, Dr. Drennen, there is positive evidence that he was one of the attorneys for Mrs. Tillman in filing this caveat and in conferring about what was her best interest in attacking the will. He and T. T. Miller as attorneys rendered legal service in this and in making the settlement, and were paid fees therefor.

The evidence of Mrs. Tillman contradicts J. L. Drennen as to the filing of the caveat and employment of counsel, but she testified that she turned over all her affairs to her brother, R. E. Clements, as soon as the will was read. The attorney's fees were paid by Mrs. Tillman at instance of Clements.

With reference to the insurance policy, Mrs. Tillman testifies (page 39): "I never was asked to give up the insurance policy. All of them, Miriam (Mrs. Drennen), Dr. Drennen, Frank Heard, and all, said it was mine." This evidence was rebutted by no one. F. A. Heard testified that all agreed for Mrs. Tillman to have the insurance. No demand was ever made on her for it. No refusal by her to pay it. It was never taken or appraised as part of the estate. It is this witness (Heard), as well as Clements, who testified that Mrs. Drennen stated to them that she had to leave, but Dr. Drennen would look after her interest. Mrs. Drennen explained this statement as meaning that Dr. Drennen, as executor, would look after her interest. The conversation was before the caveat had been filed.

The oral testimony is very voluminous, and in many places contradictory; but, taken as a whole, it is clear to my mind that Mrs. Tillman and Mrs. Drennen had very little to do with any of the transactions. The chief actors in the matter of filing the caveat, and in effecting a settlement culminating in the deed and bill of sale executed by Mrs. Tillman, were Dr. C. T. Drennen and R. E. Clements; but there is no evidence that Drennen was the authorized agent of his wife, and while there is evidence that Clements was the authorized agent of his sister, Mrs. Tillman, she knew little or nothing of what was being done. However, the evidence shows that all the legatees of this will were sui juris.

Reconciling the contradictions as best I can, and looking at the effect of the evidence, both in its positive and negative character, I find the following to be facts:

First. As to the proceeds of the insurance policy referred to in item 13 of the will, I find that no demand was made on Mrs. Tillman for the $5,000 proceeds from the life insurance policy, and that she did not "fail and refuse" to deliver said insurance money to the executors, and that the executors named in the will voluntarily consented for her to retain the same. I further find that the complainant did not object to this disposition of the insurance money, but acquiesced and assented thereto, and approved of Mrs. Tillman retaining the same.

Second. I find that Mrs. Drennen (the complainant) did not consent to, nor did she agree to, or advise or originate, the filing of the caveat; that she was no party to the transaction between Mrs. Tillman, and the Heard children, nor was she connected with, nor did she authorize or employ, any one to represent or act for her, either in the filing of the caveat or otherwise in contesting the will of testator, or in making the settlement between the Heard children and Mrs. Hattie Tillman, nor has she in any way ratified or confirmed the acts of any one purporting to represent her as agent in and about these matters as stated, although the circumstantial evidence justifies a conclusion that she had knowledge, through her husband, of the same before and at final consummation of negotiations.

Third. I find that R. E. Clements and F. A. Heard and C. T. Drennen have qualified as executors of the will in the state of Mississippi, and R. E. Clements and F. A. Heard in Georgia and Alabama, and that neither of these has accepted the trust imposed by the will.

Fourth. I find that all the parties named as legatees and affected by this litigation—that is, Mrs. Miriam Drennen, the Heard children, and Mrs. Tillman—were sui juris.

Fifth. I find, as a fact already found, but here more definitely stated, that the estate was divided as directed by testator into two equal parts, known as the first half and second half, and:

(1) The first, consisting of stocks, notes, bonds, and cash, and intended to represent the share of Mrs. Hattie Tillman (to be held in trust) was of the value, December 3, 1906, of $188,405.64, to which should be added the house and lot valued at $5,500; Total value of first half, $193,905.64.

Pursuant to the agreement between Mrs. Hattie Tillman and the executors and the Heard children, the executors distributed the above as follows:

To Mrs. Hattie Tillman, for account of the Heard children, cash.......................................... $ 60,000 00
The house and lot for account of the Heard children, and to be held by Mrs. Tillman for life, appraised value... 5,500 00
Balance to the Heard children........................ 128,405 64

$193,905 64

(2) The value of the second half of the estate as appraised was not submitted in evidence. The schedule of assets filed as ordered by the court, and of date January 28, 1910, and the oral testimony of Heard, one of the executors, shows, and I so find:

That, after payment of debts and specific minor legacies, there was paid in cash out of this half of the estate as follows:

To the Heard children ($5/6$).......................... $136,500 00
To complainant ($1/6$) including the $6,000.00 advancement
27,300 00

Total ..................................... $163,800 00

That there now remains for administration in the hands of the two executors, Heard and Clements, all the property as specified in the said schedule filed, except the Mississippi property, and that remains in the hands of all three executors, to wit, Heard, Clements, and Drennen, and the total value of said remaining property of the second half at the date of the filing of said schedule, January 28, 1910, was $57,265.53. Of this amount, subject to deductions in expenses and depreciation of value, after final administration, on final distribution, the Heard children would be entitled to five-sixths and the complainant to one-sixth.

I find that this balance is not ready for distribution because of the pending litigation and other complications which for the present prevents the final distribution thereof.

### Conclusions of Law.

#### I.

The bill as to recovery against the defendant executors for a money decree for the balance due complainant out of what is known as the second half of the estate is premature. There has been no final administration of the assets of this estate. The facts as found show: That property to the estimated value of some $57,000 is still in the hands of the executors, most of it under control of all three executors; the executor Drennen, husband of complainant, having also qualified in Mississippi, where the land representing the larger part of this balance is located. That the complainant has already received from this half of the estate cash to the amount of $27,300 (which includes advancements named in the will), and that the balance in the hands of the executors, after certain litigation is concluded, will be ready for distribution after the necessary expenses of administration are deducted. That the balance due complainant cannot now be ascertained. That executors are under bond and can be made liable for any maladministration of the estate still in their hands for final distribution.

I therefore conclude that the value of the distributive share of complainant, under item 6 of the will, cannot be ascertained and no money decree therefor can or should be entered as a matter of right against defendants at this time as prayed for.

#### II.

I do not think that complainant is entitled, at this time, to a money decree against defendants for one-sixth of what is known as the first half of the estate, or for any part of what is designated the insurance fund, which she claims she is entitled to have under items 13 and 14 of the will.

However, from my conclusions of the law, as applied to the facts developed at this hearing, and my findings as before set out, I am of the opinion that as to that one-sixth share in the half of the estate set apart to Mrs. Hattie Tillman, complainant is entitled to equitable relief.

Estoppel: Defendants have invoked the doctrine of estoppel. The evidence fails to show that Dr. Drennen was the agent of complainant, consenting to and assisting, for her, in the filing of the caveat, and consummating the settlement. She denies his agency. He denies it. While it is sought to prove his agency by his declarations as to representations, this cannot be construed to mean other than his representation of interest of complainant and all other legatees as a named executor. But aside from that view, his declaration cannot establish the fact of agency. Nor can I conclude that complainant is estopped because of any act upon her part to deceive or mislead defendants. The evidence fails to show this, and under the findings of fact that she had no part in the filing of the caveat, or the settlement, she, as a matter of course, cannot be estopped from equitable right to protection of her interest in this estate. For the application of the doctrine of equitable estoppel, there must generally be some intended deception in the conduct or declarations of the party to be estopped. Georgia Code, § 5738; also, Brant v. Virginia Coal Co., 93 U. S. 326, 23 L. Ed. 927, in the language of the Georgia statute.

As to forfeiture: While complainant is not estopped, as above found, in her right to assert protection, she is not entitled to recovery on the ground of forfeiture by Mrs. Hattie Tillman. The filing of the caveat and the failure of payment of the insurance money were no such violations of the conditions of items 13 and 14 of the will as would lead to forfeiture of all interests and thereby vesting absolutely in complainant a one-sixth interest in the first half of the estate and in the house and lot and insurance fund. Necessarily we will have to consider the two matters together; that is, the filing of the caveat and the failure to pay over the insurance fund.

What was the intent of the testator? Aside from payment of his debts and payment of certain minor legacies, the whole scheme of his testamentary intent was to provide for his wife, for certain Heard children, and for complainant. In order that he might provide for his wife, he directs to be set aside to her for life the house and lot and contents, and for her comfort, benefit, and support, all that is necessary of the income of the first half of the estate, to be reduced, as far as possible, to good securities and cash and ready paying investments. He includes the insurance fund in this interest. The whole may be designated a life interest, an annuity, or whatever term may be desired; it was, after all, only an equitable interest. The wife being provided for during her life, the Heard children and complainant, under a certain contingency, were to have this interest, less what the widow may have consumed. The title of the whole was to be placed in trust, for the twofold purpose of protecting both the corpus and the unused income, and to see that the widow had her proper portion, and complainant her proper portion in the event the latter had living a child at the death of the widow; otherwise this last to go to the Heard children. It was evident he did not want unseemly contests or litigation over the bequests so made, nor personal contentions nor strife.

Did the failure of Mrs. Tillman to pay over the insurance money, or did the filing of the caveat by her, produce a contest over this will, such as contemplated by the testator when he placed conditional limitations on her enjoyment of the interest bequeathed to her?

Taking the evidence as a whole, and looking at the conduct of all the parties interested, in their respective dealings with each other, I cannot conclude that there had been a defeat of the testamentary scheme.

In the construction of all legacies the court will seek diligently for the intention of the testator and give effect to the same as far as it may be consistent with the rules of law. Code, § 3900.

As to the insurance fund, while it was the intent of the testator to have this fund go into his estate, yet all parties, being sui juris, could direct it otherwise. The fact as found shows that all parties, including executors

and complainant, agreed otherwise. and this is not only the evidence of one, but all, of the witnesses. Mrs. Tillman was not put to her election with reference to the insurance policy. It is true the condition was incorporated in the will, and as such it was legal, and to that extent the numerous authorities cited by the learned counsel, and indicating careful research, are applicable; but she was not called upon to elect. The consent of all parties, as disclosed by the finding of fact, was not only tacit but positive that she could retain this insurance money, and, all legatees effected in the distribution of the estate being sui juris, such consent was legal.

But it is doubtful that complainant had any interest whatever in the proceeds of the insurance. By item 13 the proceeds of this insurance policy were to be turned over to the trustees to be held by them, and the rents, issues, and profits thereon were to be applied to the support, benefit, and comfort of the wife during her life, and at her death thé corpus and unexpended profits were to go to the Heard children. If the wife failed and refused to deliver the proceeds to the executors, all bequests made her were revoked and were to be divided, with accumulations, between the Heard children and complainant. The only parties at interest in this insurance money in the first instance were the Heard children and Mrs. Tillman. There is no contingency provided for. The gift is absolute to them and to her, conditioned on her failing and refusing to turn over the proceeds. All the parties being of age and consenting, as the evidence shows, and the executors not requiring payment, and the trustees agreeing, as is shown by the evidence, there was under the facts no legal forfeiture of this fund, and therefore complainant had no interest therein.

But if she had an interest, did Mrs. Tillman fail and refuse to turn over this fund and thereby work a forfeiture in her (complainant's) favor? The language of item 13 is as follows: "In the event my said wife fails and refuses to deliver said insurance money tó my executors to be and become a part of my estate, then the bequests to her are annulled."

I construe the language of this will, and the intent of testator, to imply willful failure and refusal, and I can find nothing from the evidence to justify a conclusion that there was any such element in the conduct of Mrs. Tillman. The words really mean omit to pay over, and, coupled with such omission, the idea of refusal on demand. To refuse means to deny on demand. Shaler v. Van Wormer, 33 Mo. 386; Kimball v. Rowland, 6 Gray (Mass.) 224; Bowen v. Young, 37 Misc. Rep. 547, 75 N. Y. Supp. 1027; Burns v. Fox, 113 Ind. 205, 14 N. E. 541; and Merifield v. Cobleigh, 4 Cush. (Mass.) 178.

It is contended that there was a forfeiture by Mrs. Tillman of all bequests under the will except the sum of $500 because of violation of the condition of item 14 of the will. This item provides that, if the wife should take legal steps to set aside the will and should not succeed in such endeavor, then she forfeits all bequests and takes only $500, and all property bequeathed to her goes to the Heard children and complainant. It is contended that the filing of the caveat was such legal steps as would work a forfeiture, under this item. I cannot so conclude.

There is no question, as cited in (C. C.) 44 Fed. 518, 11 L. R. A. 567, by counsel for complainant, in Brodhead v. Shoemaker et al., and as decided by Judges Pardee and Newman, that where the heirs are brought in and they contest the validity of a will and the capacity of the testator, in proceedings to probate a will in solemn form, the issue can be classified as a suit at law. Nor can there be question that in Georgia the court of ordinary is vested with exclusive jurisdiction in such cases, and that all legal steps to contest the validity of a will must begin in that court; nor is there any doubt but that the filing of a caveat is the institution of a suit at law, but the evidence discloses in this case that no final steps were reached. The legal steps in the mind of testator evidently meant a final suit at law, where the validity of the will was adjudicated after trial and judgment. The mere filing and almost immediate withdrawal, by consent of all parties, was no such suit. If this be true, the parties, each and all, were restored to

their original status. The act of probate could hardly be said to have been suspended.

"The real nature, design, and operation of a caveat is simply to suspend the act of probate until an investigation of the validity of the instrument may be had before the competent tribunal." 6 Amer. & E. Enc. (2d Ed.) 778; Maxwell, In re, 3 N. J. Eq. 614.

I construe the phrase "taking legal steps" in the will to mean that the testator contemplated a suit at law, involving a trial and adjudication against the caveator of the issue raised. It would be necessary in this view of the law to have a trial and adjudication before Mrs. Tillman could be held to the penalty of forfeiture under that condition of the will. The evidence shows withdrawal by consent before trial or the taking of any steps towards perfecting a suit, or action in its full meaning. Complainant was not necessarily, nor was she in fact, a party to this caveat. The executors propounded the will, and Mrs. Tillman filed objections to the probate. The executors were representatives of all the legatees, save the caveator. There is nothing peculiar about this case to take it out of the general rule that the executors represented complainant as well as other legatees, not joining in the caveat. Beall, Executor, v. Blake et al., 16 Ga. 136.

While this is true as to withdrawal of the caveat, the evidence does not sustain the contention of defendants that the executors could and did represent the complainant in the agreement had between Mrs. Tillman and the Heard children; nor do I find that complainant was in any way a party to the settlement. The findings of fact as to the nonagency of her husband relieves her of this contention in law, and there is nothing in the evidence to support the claim that Clements was her representative except as executor. Therefore she cannot be chargeable with having aided or advised either the caveat or the settlement. Hence the case of Donegan v. Wade. 70 Ala. 501, cited and relied on by defendants, is not applicable. Complainant neither actively interfered, nor took part, in either transaction.

### As to the Validity of the Trust.

Mrs. Tillman not having forfeited her interest in the bequests by reason of retention of the insurance fund and because she filed, but withdrew, the caveat, it becomes important to ascertain how the settlement may have affected the interests of complainant.

Item second of the will bequeaths to the widow for her life the house and lot and contents.

Item third directs all the estate (except the above portion named in item second) to be divided by the executors into two parts after paying debts.

Item fourth names Clements, Heard, and Dr. Drennen as the three trustees for the wife, and the executors are to convey to these trustees, for the use and benefit of the widow for her life, the house and lot and furniture, and one-half of the balance of the estate and shall apply the rents, profits, and income, or so much as may be necessary, to the support, benefit, and comfort of the widow during her life. The remainder over, after the death of the wife, and unexpended accumulations, by item 5, go to the five Heard children and complainant, provided she shall have become a mother of children born to her, and living at the death of the wife; otherwise the whole remainder over goes to the five Heard children.

The most vital question in the case seems to turn upon the validity of the trust created by the preceding provisions of the will. If the trust was a valid trust, the legal title to the interest devised to the wife vested in the trustees immediately on the taking effect of the will. The will, of course, became operative immediately on the death of testator. Code Ga. § 3257. Though the legal title may have vested in the trustees, yet, if this be construed to be an executed trust and Mrs. Tillman was capable of taking and managing the property devised, then her equitable interest became immediately merged with the legal title and a perfect title vested in her as beneficiary to be held according to the terms of limitation of the trust. Code, § 3737. Was the trust, therefore, an executed trust? There is no question that the widow was capable of taking. Since the act of 1886, a

married woman sui juris and, not coming under any of the disabilities of incompetency to hold, as specially provided by the statute, can take.

But it has been held that a valid trust can be created in Georgia for the benefit of a person sui juris, for life, with remainder over in trust for another person sui juris. Sinnott et al., Executors, v. Moore et al., 113 Ga. 908, 39 S. E. 415.

In answer to this, counsel for defendants with force contended that the remainder interest created by this will is contingent, and under the law of Georgia, as now obtaining, no particular estate is necessary to sustain a remainder, and the defeat of the particular estate for any cause does not destroy the remainder. Code, § 3675. They cite with confidence Fleming v Hughes, 99 Ga. 448, 27 S. E. 791, where the court held that prior to the Code a trust was necessary to preserve a contingent remainder, but that such is not now the case. In connection with this authority, they confidently rely on the case of Smith v. McWhorter, 123 Ga. 290, 51 S. E. 474, 107 Am. St. Rep. 85, where the court held that, if there is no need of a trust to protect and preserve the interest of those who are to take by way of remainder, the trust will be limited to the life estate, and as to such it is executed. In the light of these authorities, it would seem that this trust is invalid, and that Mrs. Tillman takes the legal title and can dispose of her interest regardless of the rights of complainant as a contingent remainderman. But in the same case of Smith v. McWhorter the court continues discussion of this interesting question, and it would clearly appear that the testator had a right to, and in this will has made an executory devise, the nature of which is such that a trustee is necessary to carry out his intent. In this case cited the court, at bottom of page 290 of 123 Ga., page 475 of 51 S. E., 107 Am. St. Rep. 85 says: "Likewise a grantor, while not expressly conveying to the trustee the title to the remainder estate, may create a duty in the trustee with respect to the estate in remainder so as to convert the legal estate into an equitable one and make the trust executory until the duty may be performed under the terms of the trust. Thus, if the instrument creating the trust imposes upon the trustee the duty of making division among indeterminate remaindermen after the termination of a preceding life estate, the trust is executory pending the existence of the life estate. Riggins v. Adair, 105 Ga. 727 [31 S. E. 743]; Cushman v. Coleman, 92 Ga. 772 [19 S. E. 46]. Or, if the trustee is expressly empowered to act and manage the property for the life tenant, and for the infant or contingent remaindermen, the trust is executory until the life estate is determined. Johnson v. Cook, 122 Ga. 524 [50 S. E. 367]. Generally, where the title is conveyed to a trustee in trust for a life tenant, with a remainder over, where no express trust for those who are to take in remainder is created nor any duty imposed on the trustee with respect to the estate in remainder, such remainder is a legal and not an equitable estate. The mere fact that the remainder estate may be contingent does not necessarily convert it into an equitable estate. Mitchell v. Turner, 117 Ga. 959 [44 S. E. 17]. The contingency of the remainder, however, is always an important factor in construing the character of the estate passing to the trustee, in the effort to arrive at the true intent of the grantor."

In Thomas & Co. v. Crawford, Trustee, 57 Ga. 211, it was held that: "A bequest to George G. Crawford of certain property 'to be held by him in trust for the following purposes, to wit, the rents, issues, and profits of the same to be paid over by him annually to William G. Howard during his lifetime, and at his death, the corpus of said property to be turned over by the said trustee to the children of the said William G. Howard, should he leave any children surviving him, and in the event of his death without leaving any child or children, then it is my will that said property shall be given to Margaret R. Crawford, if she is alive, and if she be dead, then to go to her children,' with discretionary power in the trustee to sell any part of the property during the trust, and to reinvest 'as in his judgment shall be for the benefit of said trust estate,' with option to make returns or not as he chooses, is a valid, subsisting executory trust, and the legal title to the corpus of the estate remains in the trustee to keep the corpus

secure for the contingent remaindermen to ascertain who they would be, and to divide the estate among them when they were ascertained, on the happening of the contingencies contemplated by the testatrix."

But the case of Prince et al. v. Barrow, Executor, et al., 120 Ga. 810, 48 S. E. 412, is a decisive authority on the question in point. It involved the construction of the will of Gen. Henry R. Jackson, who devised and bequeathed his whole estate to his wife for and during her natural life, with the condition that she apply a designated portion of the annual income thereof to her own use, and the residue was to be taken, or such as was necessary, to the support of her sister, and such as she might see proper to the assistance of children or grandchildren of such sister, and the remainder was to be divided into three equal parts for distribution between his two living children and children of such deceased son. This sister died before the testator. The court held that upon his death the whole property became a trust estate during the life of the widow, to be held and administered by her in accordance with the direction of the will. In this case the court also held that where the amount of the beneficial interest to be taken by the cestui que trust was to be measured and determined by the discretion of the trustee appointed by the creator of the trust, a court of equity will not allow the trust to be destroyed by the refusal of the person nominated as trustee to accept the trust, or by his failure to execute it, if by any possibility it is capable of execution by the court. In this case, as in the case at bar, a contract was executed by and between the widow of the testator and his children and the children of his deceased son, Henry Jackson. In this contract the widow agreed to set at rest all claims which she might or could have under the will. It is unnecessary to go into the details of the agreement. In the opinion delivered by Presiding Justice Fish in this case, on page 817 of 120 Ga., on page 413 of 48 S. E., he said: "Undoubtedly the widow and the other heirs at law of testator could set aside this will, and by agreement settle the estate among themselves if they are the only parties who have any legal or equitable interest therein."

In this case the court also decides, after a very lengthy discussion of the question, with an admission that it has been the cause of much trouble and investigation, that a court of equity will undertake to administer or direct the administration of the trust sought to be established under the will, when the trustee named by the testator declines to accept the administration, or where it involves discretionary power on the part of the trustee. In settling that question the court takes up case after case, of both federal and state authorities, to sustain the decision rendered, which has heretofore been quoted, to the effect that the court will not allow the trust to fail for the want of a trustee. See 120 Ga. 821, 48 S. E. 412.

In view of these numerous authorities, I conclude:

(1) That this bequest to Mrs. Tillman was an executory devise, and the trust was therefore valid and subsisting and the legal title to the part set aside for the trustees vested in trust eo instanti on the death of testator.

(2) By the same authorities I conclude that all parties being sui juris and the trustees declining to accept, or stating that it was unnecessary for them to do so, the contract of purchase and sale between Mrs. Tillman and the Heard legatees, as to them, is a legal and binding contract; they having a legal right to contract and having actually contracted.

(3) That complainant, not being a party to said contract, is not bound thereby, and has a contingent remainder interest in the house and lot and contents, and in the first half of the estate, said remainder subject to become vested in the event she have living a child or children born of her at the death of Mrs. Hattie Tillman, and if not the remainder becomes vested in the Heard legatees; that there is no evidence of a possibility of issue extinct, and pending the happening or not happening of the contingency named, her one-sixth undivided interest in said one-half (which, of course, is not to include the insurance fund) should be protected by the appointment of a trustee to hold and carry out the provisions of the trust as to said one-sixth.

(4) That the one-sixth interest as referred to in the preceding paragraph is one-sixth of $193,905.64, and is of the money value of $32,317.60.

Recommendations.

The master recommends:

(1) That the executors, the defendants herein, be required to pay to such trustee as may be named by the court the aforesaid sum of $32,317.60, and that the court frame such decree in accordance with these conclusions, if approved, as will protect said sum in the manner as provided under the provisions of the will creating the trust.

(2) That the injunction pendente lite be dissolved, and the executors be permitted to administer that portion of the estate undistributed.

(3) That a proper decree be made in favor of the executors in accordance with my conclusions (if approved) as to the second half of the estate.

(4) That the cost of this litigation (including master's fees and stenographer's services, but not including counsel fees) be taxed in such proportions as the court may determine; the master not assuming to make any recommendations as to assessing costs.

T. T. Miller, of Columbus, Ga., and Wimbish & Ellis, of Atlanta, Ga., for complainant.

A. W. Cozart and Carson & McCutchen, all of Columbus, Ga., and Spencer R. Atkinson, of Atlanta, Ga., for defendants.

NEWMAN, District Judge. This case is now before the court on exceptions to the report of the standing master, which have been argued and the matter submitted. Since hearing the argument I have gone over this case with much care, in view of the important and difficult questions involved.

There are exceptions by both sides, both before the master, to the draft of his report, and to the report as filed.

Complainant's exceptions are:

First, that the master erred in finding that, as a matter of fact, the widow, Hattie Tillman, did not fail and refuse to turn over to the executors the proceeds of the insurance policy, to become a part of the testator's estate, as required by the will. This exception is elaborated, but it goes to the question stated.

The second exception is that the master erred in finding and conclusion that the filing of the caveat to the will by Mrs. Tillman, and the failure to pay over the proceeds of the insurance policy, "were no such violations of the conditions of items 13 and 14 of the will as would lead to forfeiture of all interest, and thereby vesting absolutely in complainant a one-sixth interest in the first half of the estate, and in the house and lot and insurance fund."

In this connection it is claimed in the exceptions that the master erred in construing the language of the will to imply "willful failure and refusal" to turn over the proceeds of the insurance policy; the claim being in the exceptions that nothing in item 13 justifies the conclusion that the wife must be guilty of willful failure to make payment of the proceeds of the insurance policy to the executors, but that her omission to make such payment, without demand, deprived her of her legacy under the will other than the $500.

It is further claimed in the exceptions that the master erred in concluding and holding that the phrase "taking legal steps" in the will means that a suit at law, involving a trial and adjudication against the caveator on the issues raised, was necessary.

The foregoing, as stated, is considerably elaborated in the exceptions; but this states the points involved in the exceptions.

The first exception of the defendants is that the master erred in holding that "the first, second, and third grounds of the demurrer, while stated differently, are practically a general demurrer to the bill, in that such a case has not been stated as entitles complainant to relief in a court of equity," and "in the opinion of the master these are not well taken and the same are overruled."

The second exception of the defendant is that the master erred in not finding that the complainant, Mrs. Drennen, was connected with the filing of the caveat "to this extent and in this way: That Mrs. Drennen was willing that the caveat be filed and assented to its being filed, provided R. E. Clements thought that it was for the best interest of Mrs. Tillman for the caveat to be filed, and upon that concerted action on the part of complainant and R. E. Clements the caveat was filed." Certain evidence is set out which, it is claimed, justifies this exception.

The third exception is that the master erred in finding that this bequest to Mrs. Tillman was an executory devise, and the trust was therefore valid and subsisting and the legal title to the part set aside for the trustees vested in trust eo instanti on the death of the testator, contending that the master should have found that the trust sought to have been created by the testator was illegal and void.

The fourth and fifth exceptions are that the master erred in recommending that a trustee be appointed to whom the executors should be required to pay the $32,317.60, to be held for the benefit of the complainant pending the matter of the contingency provided for in the will.

The first matter that may be noted in passing on these exceptions is the objection to the master's finding on the pleading. No great stress was laid on this in the argument, and properly so, because I do not think the exceptions with reference to the pleading are meritorious.

The next exception in order, probably, is the exception of the defendants in that the master erred in not finding that Mrs. Drennen, the complainant, co-operated with Mrs. Tillman, or rather with her brother, R. E. Clements, in the filing of the caveat, and was such a party to it and co-operated in such a way that she is precluded now from raising the question she does by her pleading with reference thereto.

This has been a matter of some difficulty with me, and I have gone over the evidence with considerable care. But after full consideration of it, I am satisfied that the evidence justifies the master's conclusion on this subject. The familiar rule, so often controlling in questions of this sort, that where the master has the witnesses all before him, sees them, and hears their examination and cross-examination, and hears the case in the locality where the whole matter occurred, he can better judge of the value of the testimony than the court can from the written or printed record, is applicable here and should control. But, independently of this, I think that a careful examination of the

evidence, as it is before the court here, justifies the conclusion reached by the master "that Mrs. Drennen did not consent to, nor did she agree to, nor advise or originate, the filing of the caveat."

[1] The next exception that may be considered is the defendants' exception that the master erred in finding that the trust for Mrs. Tillman was properly and legally created by the will. In my judgment the master's finding and conclusion on this subject were correct. If a life estate in one-half of the testator's property had been given to Mrs. Tillman and a trust created for it, then a different question would be presented; but where, as in the present case, the trustees are given certain duties to perform with reference to the property, that is of managing it and collecting the income, and paying to Mrs. Tillman so much of the income, and only so much, as was necessary for her "support, benefit, and comfort," it makes an entirely different proposition. In addition to this, there was a contingency as to Mrs. Drennen taking in remainder any part of this first half of the estate, as stated in the fifth item of the will. The master, also, it seems to me, correctly found that the case of Prince et al. v. Barrow, 120 Ga. 810, 48 S. E. 412, is controlling, independently of the other authorities cited by him in his report. I have had no doubt from the beginning of the case that this trust was properly created under the law of Georgia.

The complainant's exceptions raise the most serious questions for consideration: First, with reference to Mrs. Tillman's failure to pay over the insurance money; and, second, the filing of the caveat to the will.

[2] As to the first matter, the $5,000 of insurance money, the master correctly found that what occurred as to this did not work a forfeiture of Mrs. Tillman's legacy under the will. The evidence shows that every one interested in the estate agreed, and that it was a matter of unanimous consent, that Mrs. Tillman should retain this $5,000. The master says on this subject:

"While there is no direct evidence by her (Mrs. Drennen) that she desired her mother to take the proceeds of the insurance policy, the evidence generally shows that it was conceded that Mrs. Tillman ought to have the insurance money. Some of the witnesses state positively that there was a general understanding that she need not pay this over to the executors They and she testify no demand was ever made for it and no refusal on her part to pay it over."

There is no difficulty, under the evidence, in acquiescing in the master's conclusion that this retention of the insurance money by Mrs. Tillman, acceded to, and, under the evidence, practically agreed to, by everybody in interest, is insufficient to deprive her of her legacy under the will.

[3] The next, and most serious, question is the filing of the caveat by Mrs. Tillman, in the court of ordinary for Muscogee county.

On this question the master says:

"I construe the phrase 'taking legal steps' in the will to mean that the testator contemplated a suit at law, involving a trial and adjudication against the caveator of the issues raised. It would be necessary in this

view of the law to have a trial and adjudication before Mrs. Tillman could be held to the penalty of forfeiture under that condition of the will. The evidence shows withdrawal by consent before trial, or the taking of any steps towards perfecting a suit or action in its full meaning."

It may be unnecessary to go as far as the master does in construing this language "taking legal steps," that there must be a trial and final adjudication; but there should be shown, at least, some persistency by the caveator in contesting the will. The mere filing of the caveat on the 2d of July, and the voluntary withdrawal of the same on the 12th, would certainly not come within the meaning of the testator. He said in the will, "In the event my said wife shall take any legal steps to set aside this will and shall not succeed in such endeavor, etc." Conceding that the filing of the caveat was "taking legal steps," the almost immediate withdrawal of the caveat would hardly be "not succeeding in such endeavor," but would be a voluntary abandonment of the endeavor.

[4] The most important phase is that, as the result of this proceeding in the court of ordinary, the widow, Mrs. Tillman, received a lump sum down instead of a life support out of the estate, as provided by her husband in his will. The Heard children bought Mrs. Tillman's legacy, the caveat was withdrawn, and the will promptly admitted to probate, and the administration of the estate proceeded. This agreement was undoubtedly good between the Heard children and Mrs. Tillman; they were satisfied with it at the time, and it is apparently still satisfactory to them. How was Mrs. Drennen hurt by this agreement between the Heard children and Mrs. Tillman, which avoided a contest over the will and admitted it to probate? If the caveat had not been filed and the will regularly admitted to probate, and the estate been administered under it, her rights would have been measured by the will, and her participation in the first half of the estate, as it is called, would have been dependent upon the occurrence of the contingency provided for by Mr. Tillman in the will; that is, that she should take one-sixth of this one-half of the estate in remainder, provided she should have a child born to her and living at the time of Mrs. Tillman's death. As it stands now, she has the same right exactly, and that right must be protected, of course, in some way.

If the contest of the will had proceeded, and it had been set aside, of course Mrs. Tillman would have been the sole heir to the estate, and Mrs. Drennen would have received nothing. Her participation in the estate was only because of the will, and she has already received from the estate a large part of the one-sixth of the second half of the estate, which was given to her and the five Heard children.

As I have stated, it seems to me that the important feature of this branch of the case is this settlement between the Heard children and Mrs. Tillman, and if satisfactory to them, and good as between them, and Mrs. Drennen's rights are in no way affected by the same, I do not see how she can set up the claim made by this bill. If the caveat had not been filed by Mrs. Tillman and no steps of any kind taken to

contest the will, and the Heard children had bought Mrs. Tillman's interest of a life support in the estate, it would hardly be claimed that they violated the provisions of the will with reference to "taking legal steps," etc., to contest it. Mrs. Drennen would not have been affected in any way by this and would have had no cause to complain. Therefore the filing of the caveat and its almost immediate withdrawal was not "taking legal steps" to set aside this will, and, failing to succeed in such endeavor, neither was the purchase by the Heard children of Mrs. Tillman's right to a support for life out of the estate, nor were the two together, in my judgment, a violation of this provision of the will.

In the case of Re Estate of John R. Hite (Grove v. Gross, 21 L. R. A. [N. S.] 953[1]), a contest was filed to a codicil to the will of Hite. The executor employed attorneys to meet the contest and filed his answer; motion was made by contestant to strike a portion of the answer, which motion was granted; the hearing of the contest was continued by consent several times, the case pending from April until January, when it was compromised. It was held that this amounted to a contest of the will, violating a provision of the will against contesting the same by any of the legatees. This made that case materially different from the present case, where nothing was done, as has been formerly stated, except to file a caveat and within a few days to withdraw it without any action whatever. The Hite Case, however, it may be conceded, is the strongest case cited by counsel for complainant.

Counsel for complainant has ably contended that the fact of this filing of the caveat to the will by Mrs. Tillman and the sale by her of her life support to the Heard children violated the "testamentary scheme" of Mr. Tillman. It is urged that the will discloses the fact that it was the testator's purpose that his wife should simply have a support for life out of the estate, and not a lump sum to be hers absolutely. It may be equally well urged that it was his belief that arranging his estate as he did was best for the comfort and happiness of Mrs. Tillman, that she would be relieved in this way of the care and responsibility of the property and have every comfort that she needed during life. But, however this may be, it could not interfere with the right of parties competent otherwise to contract.

The same suggestion might have been made as to the will in the case of Prince v. Barrow, supra. The first language used by the court in the opinion in that case is:

"Can the widow and other heirs at law of the testator set aside his will, and by agreement settle his estate among themselves? Undoubtedly they can, if they are the only parties who have any legal or equitable interest therein."

Would it not be equally true if the other parties having any interest under the will have their rights fully recognized and maintained by any agreement so made? Mrs. Drennen's rights under this will as the testator made it are certainly unaffected by the agreement between

[1] 155 Cal. 436, 101 Pac. 443, 17 Ann. Cas. 993.

the Heard children and Mrs. Tillman, or by the master in his findings and report. I am unable to reach any other conclusion than that the report of the master is correct, and that the exceptions by both the complainant and defendants should be overruled.

What has been said makes it unnecessary to consider or to discuss the contention of counsel for defendants that a court of equity will not, in any event, decree a forfeiture. It is an interesting question, but it need not be gone into here.

How Mrs. Drennen's contingent interest in this estate should be protected is a matter about which I am in doubt. Whether a trustee or trustees should be appointed by the court to hold the same for her benefit pending the contingency, or whether it is well protected as it stands in the hands of the executors, is a matter that may be determined on the taking of the final decree, when counsel can be heard, if they desire, with reference to the same.